# COUNTY OF HENNEPIN v. ARNOLD P. MIKULAY AND ANOTHER.

194 N. W. 2d 259.

January 28, 1972—Nos. 43434, 43439.

*O'Connor, Green, Thomas, Walters & Kelly, Joe A. Walters,* and *James R. Dorsey,* for appellants.

*George M. Scott,* County Attorney, and *Floyd B. Olson,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is a consolidated appeal from summary judgments entered by the District Court of Hennepin County.

Appellants herein, Arnold P. and Leonard J. Mikulay, were the owners of three parcels of land in downtown Minneapolis involved in a condemnation proceeding commenced by Hennepin County for the acquisition of land on which to build a new county hospital. The land owned by the Mikulays was described as parcels 3, 5, and 10 in the condemnation petition. A more detailed description is unnecessary. On December 10, 1970, a hearing was held in the district court on the petition to condemn. The Mikulays were present at the hearing but made no objection to the taking, so on December 22 the petition was granted and commissioners were appointed pursuant to statute.

On March 26, 1971, the commissioners filed their report. The Mikulays were willing to accept the commissioners' appraisal on all three parcels and took no appeal from the award. Hennepin County, however, filed appeals as to parcels 3 and 5.

The county filed a motion, apparently under Minn. St. 1969, § 117.20, subd. 5,[1] for permission to deposit with the clerk of district court three-fourths of the amount of the award. The Mikulays then moved for leave to file a supplemental answer contesting whether the county intended to take the land involved for a public purpose. The court on July 9, 1971, made its order authorizing the county to deposit with the clerk of court the sum of $171,375, that amount being three-fourths partial payment of the award plus appraisal fees, and it also permitted the Mikulays to file a supplemental answer. It was further provided that the amount of money deposited should not be released "until there has been an order of [the trial] Court entered that [the Mikulays] have relinquished possession of the property designated as Parcels numbered 3 and 5 herein."

Thereafter, the Mikulays did file a supplemental answer, in which they alleged that the land was not being taken by the county for a public use but that instead it was the county's intention to sell part of the land. The Mikulays now concede that parcel 5 was taken for a public purpose, so this appeal concerns only parcel 3.

The county thereafter moved for summary judgment, seeking a determination that the taking of the property was for a public purpose. It then commenced an action in ejectment, seeking to

[1] Minn. St. 1969, § 117.20, subd. 5, contains no express provision for taking possession upon making such deposit. Minn. St. 1969, c. 117, was in large part repealed by L. 1971, c. 595, § 29, and was replaced by amendatory statutes contained in L. 1971, c. 595. L. 1971, c. 595, § 6, codified as Minn. St. 1971, § 117.042, provides that the condemnor may take title and possession prior to the filing of the award by paying the owner or depositing with the court an amount equal to the condemnor's approved appraisal.

gain possession of the property, and subsequent thereto it moved for summary judgment in that action also.

The motions for summary judgment were supported by affidavits of Floyd B. Olson, assistant county attorney; Jack M. Provo, chairman of the Board of County Commissioners; and Stanley R. Cowle, administrator of Hennepin County. All affidavits alleged that the taking of the parcels involved was necessary for public purposes. Cowle's affidavit, which is characteristic of the three, states among other things:

"* * * [A]ll parcels * * * are necessary for * * * the present and future development of the new Hennepin County General Hospital; that the block between Sixth and Seventh Streets and Portland and Park Avenues will be used for direct or auxiliary medical facilities or may be used for parking in connection with the new Hennepin County General Hospital for the public and/or employees thereof; that if subject block is not immediately used for the new Hennepin County General Hospital, that other interim public uses auxiliary to the needs of the new Hennepin County General Hospital may be employed by the Hennepin County Board of Commissioners; that subject block has been identified by the architects and planners as a land resource to be part of both the short-range and long-range requirements to support the development of the major medical complex within the guidelines established by the Metropolitan Health Board."

The motion also finds support in a deposition of Cowle, taken at the Mikulays' instance, in which he testified that all the property was needed for the present and future use of the hospital. No counteraffidavits were submitted by the Mikulays nor did they present any other material which was persuasive as to the existence of any issue of fact.

On August 10, 1971, the court granted summary judgments on both motions. In its memorandum, the court, among other things, said:

"Under our statutes there is no provision authorizing the defense that condemnation proceedings are not for a public purpose to be raised for the first time upon appeal from the Commissioners' award, whoever the appellant might be. Even if permitted to be raised after the award, in this case a review of the file, affidavits and deposition does not establish a scintilla of admissible evidence that the acquisition of defendants' land is other than for public hospital purposes. The claim apparently is based solely upon an out of court reflection by one of the county commissioners."

■ We have held on a number of occasions that where affidavits are submitted in support of a motion for summary judgment under Rule 56, Rules of Civil Procedure, the nonmoving party cannot simply rely upon general statements in a complaint. We think the same rule applies to the supplemental answer we have here. A party cannot create a fact issue by claiming that the facts which may be developed on cross-examination at the time of trial will permit him to reach the trier of facts. Instead, the nonmoving party must show at the time of answering that specific facts do exist which create an issue for the trier of facts. Rosvall v. Provost, 279 Minn. 119, 155 N. W. 2d 900 (1968); Ahlm v. Rooney, 274 Minn. 259, 143 N. W. 2d 65 (1966); Borom v. City of St. Paul, 289 Minn. 371, 184 N. W. 2d 595 (1971); Morgan v. McLaughlin, 290 Minn. 389, 188 N. W. 2d 829 (1971).

We have recognized that Rule 56 was amended in 1959 "to provide that if a summary judgment motion is supported by affidavits, depositions, etc., the nonmoving party cannot rely on assertions in his pleadings to create fact issues. If the summary judgment motion is to be properly contested, the adverse party must present specific facts showing a genuine issue for trial unless, of course, the facts asserted by the moving party fail to adequately negate any issue of fact raised by the pleading." Ahlm v. Rooney, 274 Minn. 259, 262, 143 N. W. 2d 65, 68 (1966). See, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., Authors' Comments to Rule 56, p. 570.

It follows that in this case, where there was nothing persuasive submitted in opposition to the affidavits supporting the motion for summary judgment, the court properly granted the motion.

■ As far as the ejectment case is concerned, that has now become moot by virtue of the surrender of possession by the landowners to the county and the county's acceptance of such possession. There is no longer anyone to eject, so there is nothing for us to decide as far as that appeal is concerned.

■ The Mikulays' claim that there may have been a change of the county's plans to use the property for hospital purposes is based on two newspaper articles, one of which appeared in the Minneapolis Tribune on June 2, 1971, and the other in the Minneapolis Star on June 28, 1971. These articles purported to relate statements by the chairman of the Hennepin County Board and the administrator of the county that some of the condemned land might be sold to the public because of some revisions in the hospital construction plans. Apparently, the description of the land that might be sold included parcels 3, 5, and 10, the Mikulays' property, or some part thereof. While it does not appear in the record, it was admitted on oral argument that subsequent to the granting of summary judgment by the lower court the Mikulays surrendered and the county took possession of the property involved, and that the Mikulays have accepted and have been paid the amount deposited with the clerk of court, which represents three-fourths of the amount of the commissioners' award.

While the Mikulays raise other issues in their appeal here, the main thrust of their argument is that, inasmuch as the county may abandon the proceedings at any time prior to final judgment, it may not take possession under Minn. Const. art. 1, § 13, until the full amount of the award of the commissioners is paid. Article 1, § 13, reads:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

We think this argument has been sufficiently answered by our prior decisions. In Johnson v. Town of Clontarf, 98 Minn. 281, 288, 108 N. W. 521, 524 (1906), we said:

"* * * When property is taken directly by the state the constitutional requirement is satisfied if an impartial tribunal is provided for determining the question of compensation to which the citizen may freely resort and be heard at any time and if the sum to which he is entitled is made, when ascertained, a charge upon the public treasury of the state or some subdivision thereof."

In State ex rel. McFarland v. Erskine, 165 Minn. 303, 306, 206 N. W. 447, 449 (1925), we said:

"* * * When an appeal is taken, the damages cannot be paid until they have been ascertained, that is, not until after the appeal has been disposed of. * * * The ultimate payment of compensation to the landowner is secured because the county treasury is charged with the payment thereof."

Here, while the statute permits the deposit of not more than three-fourths of the amount of the award, ostensibly for the purpose of saving the condemnor interest on the commissioners' award, the county is obligated to pay whatever the damages are assessed to be on the trial, at least if the right to abandon the proceeding has been lost.

The case of Curtis v. St. Paul, S. & T. F. R. Co. 21 Minn. 497 (1875), involved a condemnation by a railroad company. G. S. 1866, c. 34, tit. 1, § 23, in effect at that time, provided:

"The construction of such road, line, canal, or the prosecution of such improvement, shall not be hindered, delayed or prevented by the prosecution of any appeal: *provided*, the corporation execute and file with the clerk of the court in which the appeal is pending, a bond to be approved by said clerk, with sufficient sureties, conditioned that the persons executing the same shall pay whatever amount may be required by the judgment of the

court therein, and abide any rule or order of the court in relation to the matter in controversy."

With respect to the filing of such bond, we said (21 Minn. 498):

"* * * This satisfied the constitutional requirement, that 'just compensation must be first paid or secured, before private property can be taken for public use.' "

If the filing of such bond satisfied the constitutional requirement of art. 1, § 13, it must follow that the deposit of three-fourths of the award, coupled with a charge upon the county treasury for any additional amount awarded, also satisfied the constitutional requirement.

■ The county argues that the determination of whether the land is being taken for a public purpose must be made at the original hearing on the petition. Many of our cases would so indicate. In State, by Mondale, v. Wren, Inc. 275 Minn. 259, 261, 146 N. W. 2d 547, 550 (1966), we said:

"It is evident from the foregoing that appellant misconceives the proper time to challenge the power to take lands for public use in a condemnation proceeding and the effect of the intermediate order granting the petition to condemn. Minn. St. 117.07 clearly provides for a judicial hearing on the question of whether 'the proposed taking shall appear to be necessary and such as is authorized by law' at the time the condemnor's petition is presented to the court. This section further provides that the court at this time 'shall hear all competent evidence offered for or against the granting of the petition.' If the court then finds the taking to be authorized, § 117.07 requires the granting of the petition and the appointment of three commissioners to ascertain and assess damages. * * *

*     *     *     *     *

"In this case, at the hearing on the petition the court, over appellant's sole objection that the state was precluded from acquiring access to its property because of a prior title registration proceeding, approved the taking and established the scope

of the rights acquired. No appeal from this intermediate order has been included in this appeal from the judgment. Moreover, this order was unaffected by either the court's subsequent order granting leave to file an amended answer or by the owner's appeal from the commissioners' award. Without a vacation of this intermediate order, neither the filing of the amended answer nor a reassertion of the objections to the taking upon an appeal from the commissioners' award could operate to revive objections which were required to be asserted in the hearing on the petition, the only time provided for contesting the validity of the taking. Thus, the trial court was correct in limiting the issue upon appeal from the commissioners' award to the amount of damages sustained by the taking of the rights specified in the intermediate order."

Clearly, if the above language is applied literally, the question of whether land is taken for a public purpose could never be raised except at the time of the hearing on the petition. The trouble in this case, and it may arise in others, is that the purported intention of the county to abandon its plan to take for a public purpose did not appear until long after the hearing on the petition. Assuming that the newspaper articles upon which the Mikulays rely could be considered evidence—which we doubt— it may be arguable that they should have an opportunity to litigate the issue of taking for a public purpose at some point. In Housing and Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 14, 104 N. W. 2d 864, 874 (1960), we reviewed a question of this kind by certiorari. There we said:

"While it may be conceded that courts have generally disclaimed the power of supervising the selection of a site for public improvements, nevertheless they are reluctant to surrender their right to prevent an abuse of the discretion delegated by the legislature by an attempted appropriation of land in utter disregard of the public necessity of its use. If property is taken for a use that is not public, the owner's constitutional rights are infringed. It is presumed that property taken under the power

of eminent domain is taken for the purpose stated in the condemnation proceeding. That presumption is not conclusive, however, and courts will interfere for the protection of the property owner where it appears that under the guise of taking the property for a proper use it is in fact being taken for an improper use, or, as we held in State ex rel. Ford Motor Co. v. District Court, 133 Minn. 221, 158 N. W. 240, the conditions for the exercise of the power are not present. Great weight must be given to the determination of the condemning authority, and the scope of review is narrowly limited. If it appears that the record contains some evidence, however informal, that the taking serves a public purpose, there is nothing left for the courts to pass upon. Courts may interfere only when the Authority's actions are manifestly arbitrary or unreasonable."

The question of public necessity for the taking in a condemnation proceeding is legislative, and a determination thereof by the legislative tribunal is reviewed on appeal by the courts only to determine whether the taking was arbitrary, capricious, fraudulent, or contrary to law. City of Austin v. Wright, 262 Minn. 301, 114 N. W. 2d 584 (1962).

In State, by Mondale, v. Ohman, 263 Minn. 115, 120, 116 N. W. 2d 101, 104 (1962), we said:

"Whether a taking by the commissioner of highways is arbitrary or discriminatory ordinarily presents a question of fact for the trial court subject to the same governing principles on appeal as are fact questions in other types of litigation. If there is evidence or reasonable inferences from evidence which give support to the determinations of the finders of fact with respect to this issue this court may not interfere therewith."

Again, in State, by Lord, v. North Star Concrete Co. 265 Minn. 483, 486, 122 N. W. 2d 118, 121 (1963), we said:

"* * * The commissioner's determinations with respect to the necessity, as well as the extent of the taking including the

interest to be acquired, are subject to a limited review by the courts."

See, also, State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188 (1923); Packard v. County of Otter Tail, 174 Minn. 347, 219 N. W. 289 (1928); Housing and Redevelopment Authority v. Minneapolis Metropolitan Co. *supra.*

Had the Mikulays raised this question at the original hearing on the petition, they obviously would have had a full hearing. But, as has been said above, the difficulty here is that they had no information at that time that would lead them to believe that the county might not use all of the property for a public purpose. Consequently, while we feel that in this case they have made no showing on the motion for summary judgment that would raise any material issue of fact, we do not wish to close the door in a proper case to a landowner's raising the question of whether the taking is for a proper purpose. We decide only that in this case the summary judgment was properly granted.

■ The authorities are in hopeless conflict on the question as to when the right of the condemnor to abandon the proceedings is lost. See, generally, Annotation, 121 A. L. R. 12. In 27 Am. Jur. 2d, Eminent Domain, § 453, we find the following general rule:

"In every form of procedure for appropriating land for the public use, there must be a point when the right of the condemning party to abandon the proceedings is lost, and the right of the owner of the land to compensation becomes vested, but the fixing of that point depends largely upon the statutes and practice of the different states."

It has been held that when the condemnor takes possession and files a bond as security for payment, or pays the amount of the award into court, the rights of the parties have vested and the condemnor has lost the right to abandon. 27 Am. Jur. 2d, Eminent Domain, § 453, p. 375; Annotation, 5 A. L. R. 2d 724, § 5.

Nor is it easy to determine from our cases when the right to

abandon the proceedings arises.[2] The general rule is quite broadly stated in a number of cases, but the determination of the exact question of when the right to abandon arises seems to be left in a vacuum. In State, by Ervin, v. Appleton, 208 Minn. 436, 438, 294 N. W. 418, 420 (1940), some importance was attached to the fact that the condemnor had taken possession. We there said:

"The general rule, in the absence of statute, is that discontinuance of condemnation proceedings may be had at any time before the rights of parties have become reciprocally vested, as determined by the time when the property owner has a right to payment of the award and the state has the right to take and hold the premises. [Citations omitted.] These rights are correlative and coincident and vest simultaneously in the respective parties. [Citations omitted.] Obviously, *where possession has not been taken, there is no vested right to payment of the award,* at least until appraisers have been appointed and have acted and their award has become final." (Italics supplied.)

Thus, it appears that where possession is not taken, the right to abandon still exists; but the opposite question, whether, when possession has been taken, the right to abandon has been lost, is more difficult to decide.

In Witt v. St. Paul & N. P. Ry. Co. 35 Minn. 404, 407, 29 N. W. 161, 162 (1886), the majority of the court refused to pass on the question as to whether the condemnor, by taking possession, had lost the right to abandon the proceeding. The majority did say:

"* * * Had the company filed such bond [to secure payment], and taken possession, the subsequent right to abandon the proceedings without the consent of the respondent would have been lost."

---

[2] Cases involving the right to abandon under home rule charter or specific authority granted by the legislature are not in point nor are they discussed herein. See, for instance, McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52 (1922).

Mr. Justice Mitchell and Mr. Justice Dickinson, in a special concurring opinion, said (35 Minn. 407, 29 N. W. 162):

"We concur in the decision, but put it upon the ground that the railroad company, having, pending the condemnation proceedings, and after the filing of the appraisement of the commissioners, taken possession of the property, and appropriated it to the purpose of its railway, had elected to take, and had *taken*, the property, and that its right to abandon the proceedings, unless with consent of the land-owner, was lost; the only matter left for future determination being the amount of his compensation, as to which the railway company, by taking the property, had elected to take its chances."

It may be stated generally that the condemnor ordinarily may abandon the proceedings until the reciprocal rights of the parties have vested. The difficulty is in determining when the reciprocal rights of the parties have vested. In State, by Lord, v. Myhra G. M. C. Truck & Equipment Co. Inc. 254 Minn. 17, 20, 93 N. W. 2d 204, 206 (1958), we said:

"* * * We therefore hold that upon expiration of the time to appeal from the commissioners' report filed in condemnation proceedings instituted by the state, or upon entry of judgment if an appeal is taken, the rights of the respective parties become vested and the state may not then dismiss the proceedings in whole or in part. This does not mean, however, that the right to dismiss cannot terminate before the expiration of the time to appeal or before entry of judgment where circumstances require it."

In State ex rel. McFarland v. Erskine, 165 Minn. 303, 307, 206 N. W. 447, 449 (1925), we said:

"In every form of procedure for appropriating land for the public use, there must be a point where the right of the condemner to abandon the proceeding is lost and the right of the landowner to compensation becomes vested. As a general rule the condemner cannot deprive the landowner of a vested right to

compensation by abandoning the proceeding. The theory upon which his [sic] rule is based is that, upon final termination of the proceeding, the right of the condemner to take and hold the land and the right of the landowner to the money are correlative and coincident and vest simultaneously in the respective parties."

Applying these rules to the present case, it would seem that, upon the property owners' surrender of possession and the condemnor's acceptance of it, coupled with the acceptance by the landowners of the amount deposited with the clerk, the rights of the parties became vested and it was then too late for the condemnor to abandon the proceeding. All that remained was a determination of the amount of damages which the property owners were entitled to receive.

This does not conflict with Independent School Dist. No. 273 v. Gross, 291 Minn. 158, 168, 190 N. W. 2d 651, 657 (1971), where we said:

"We think it may be fairly said that, in the absence of a situation as in [State, by Lord, v. Myhra G. M. C. Truck & Equipment Co. Inc. *supra*], where there was a failure of either party to appeal or take some action to maintain the viability of the proceedings, discontinuance should be permitted at any time before the rights of the parties have become reciprocally vested—the time when the property owner has the right to payment of an award and the condemnor has the right to take and hold the premises."

The above case is distinguishable from that now before us in that there the school district had not taken possession nor had it paid any portion of the award, and it had preserved the right to abandon the condemnation proceedings by filing a dismissal prior to the expiration of the time for appeal. Here, not only did the county take possession, but the property owners accepted a substantial partial payment of the award. Under these circumstances, the rights of the parties have become reciprocally vested.

Thus, while the court properly granted summary judgment on the record before us due to failure of the nonmoving parties

to submit any evidence to substantiate the existence of a genuine issue of fact for trial, it would appear that, even if the nonmoving parties could have submitted evidence that would. raise a question of fact for trial, events that have occurred since the summary judgment was granted have now reached a point where the rights of the parties are definitely vested. As a result, the decision should be affirmed.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.