Judith LUNDGREN and Gary
Lundgren, husband and wife,
Respondents,

v.

John EUSTERMANN, M.D.,
petitioner, Appellant.

No. C8–84–966.

Supreme Court of Minnesota.

July 12, 1985.

C. Allen Dosland, William A. Moeller, New Ulm, for appellant.

David G. Moeller, Minneapolis, for respondents.

SIMONETT, Justice.

In this case we conclude that plaintiffs' expert, a licensed consulting psychologist, is not qualified to give opinions in a medical malpractice action on the standard of care required of the defendant medical doctor. We reverse the contrary ruling of the court of appeals.

Plaintiff-respondents Judith Lundgren and her husband, Gary, sued defendant-appellant John Eustermann, M.D., claiming Dr. Eustermann was negligent in treating Judith's mental and emotional illness with the drug Thorazine. Plaintiffs included in their complaint a separate count for punitive damages. Dr. Eustermann is a family physician, with training in internal medicine, and has practiced in Mankato for approximately 30 years.

In March 1984, some 14 months after the suit had been started, defendant served a motion for partial summary judgment to dismiss plaintiffs' claim for punitive damages. The motion was made on the depositions that had been taken of Mr. and Mrs. Lundgren, a brief affidavit of Dr. Eustermann, and plaintiffs' answers to defendant's interrogatories directed to plaintiffs' expert medical testimony. Plaintiffs' answers to these interrogatories consisted of a detailed written response dated May 29, 1983, by William B. Rucker, Ph.D., a licensed consulting psychologist. After receiving the motion papers, plaintiffs obtained a supplemental letter report from Dr. Rucker in which the psychologist elaborated on why he thought the defendant

doctor's treatment exhibited willful indifference to the patient's rights and safety. This letter, dated April 18, 1984, was submitted to the trial judge April 23, the day the motion was heard.

The trial court ruled that Dr. Rucker was not qualified to give an opinion on the standard of medical care involved and granted defendant's motion for partial summary judgment dismissing the punitive damages claim. Although this is a nonappealable order, the court of appeals granted plaintiffs' petition for discretionary review. The court of appeals limited its review to "Whether evidence of the opinion of Dr. William Rucker, a licensed consulting psychologist, submitted to the trial court by petitioners, was sufficient to raise a genuine issue of material fact on the claim for punitive damages." Thereafter the court of appeals reversed the trial court, ruling that Dr. Rucker had the requisite competence to give expert opinion on the physician's standard of care, and reinstating the punitive damages claim for trial. *Lundgren v. Eustermann*, 356 N.W.2d 762 (Minn.App.1984). We granted Dr. Eustermann's petition for further review.

Judith Lundgren is a housewife, in her forties, with a history of mental and emotional problems. In 1973 she was hospitalized at Fairview Hospital by her attending psychiatrist (who is not sued, any claim against him being time barred), receiving electro-convulsant treatments and medication. While in the hospital and upon her discharge, she was treated with Thorazine. She apparently treated with this psychiatrist until October 1974. Beginning about April 1975 and continuing to January 1981, Judith came under the care of Dr. Eustermann at the Mankato Clinic, and during this period of time, Dr. Eustermann also prescribed Thorazine for the patient.

Dr. Rucker's view, stated in his answers to defendant's interrogatories, was, in part, that Thorazine, an antipsychotic drug, was less appropriate for Judith Lundgren than antidepressant drugs; that the continued prescription of Thorazine over a 6-year period was inappropriate; that the treating

physician has an obligation to monitor the patient for adverse side effects from use of the drug; that there was no medical record that Dr. Eustermann had monitored for side effects; that the patient over the 6-year period had reported various symptoms which "could be" related to Thorazine treatment; that customary medical treatment would require a weighing of the relative benefits and risks of the continued use of a particular medication; and that, under the circumstances, the continued use of Thorazine was not acceptable medical practice.

We do not understand defendant to challenge Dr. Rucker's knowledge of Thorazine, its purposes, characteristics, and side effects. Defendant does, however, challenge Dr. Rucker's qualifications to give opinions on the standard of care to be exercised by a medical doctor in prescribing the drug for a patient. It is incumbent, in a medical malpractice action of this kind, for the plaintiff to offer expert testimony to establish the standard of care and the doctor's departure from that standard. *See, e.g., Cornfeldt v. Tongen,* 262 N.W.2d 684, 692 (Minn.1977). The standard of care to be applied is that standard of skill and learning ordinarily possessed and exercised under similar circumstances by physicians in good standing in the same or similar localities. *Swanson v. Chatterton,* 281 Minn. 129, 134, 160 N.W.2d 662, 666 (1968).

To establish the foundation necessary to qualify a witness as an expert on whether a physician has exercised that degree of care required of a physician in administering Thorazine, the witness must have both the necessary schooling and training in the subject matter involved, plus practical or occupational experience with the subject. *Cornfeldt,* 262 N.W.2d at 692. Ordinarily, this foundation is best supplied if the expert witness is also a physician, especially a physician in the same area of practice, but this need not always be so. At least some courts have allowed a variety of cross-overs on medical expert testimony in malpractice actions if

the proposed expert's knowledge and experience of the specialty or profession in question is apparent. *See* 1 D. Louisell & H. Williams, *Medical Malpractice* § 11.30, p. 11–92, n. 23. In any event, theoretical expertise is not enough. There must also be some practical knowledge or experience. Thus, in *Swanson* we refused to let an internist testify to the standard of care required of an orthopedist in the treatment of an arm fracture, not because the witness was an internist, but because the witness lacked experience and expertise in treating fractures. What is required, we said, is "a practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant." *Swanson,* 281 Minn. at 137–38, 160 N.W.2d at 668, *quoting Pearce v. Linde,* 113 Cal.App.2d 627, 629, 248 P.2d 506, 508 (1952), *quoting Sinz v. Owens,* 33 Cal.2d 749, 753, 205 P.2d 3, 5 (1949). In *Cornfeldt,* to give another example, we intimated that a nurse anesthetist might have been a competent expert witness on the standard of care for the defendant anesthesiologist "[i]f he [the nurse anesthetist] otherwise had sufficient scientific and practical experience." 262 N.W.2d at 697.

In this case the expert witness was not a physician but a psychologist. He has admirable qualifications as a psychologist, with extensive training and experience in the areas of psychology and pharmacology, including a doctorate in biopsychology. Dr. Rucker has also done consultant work for drug companies and has engaged in research and laboratory studies on the psychopharmacologic aspects of drug dependence. He has read books and journals, attended lectures, and trained graduate students, and he may well have the requisite scientific knowledge to testify about the nature of Thorazine, its dangers and uses. What the witness lacks, however, is practical experience or knowledge of what physicians do. He himself has never prescribed Thorazine for a patient. It is one thing to study Thorazine in the laboratory and to discuss it in the classroom, but it is

quite another thing to prescribe the drug for a patient under the circumstances of a family medical practice. Dr. Rucker does not know how physicians themselves customarily use Thorazine in treatment of their patients. In his response to defendant's interrogatories, Dr. Rucker concedes, "I have not worked with physicians in the Mankato area who have dealt with the question of when and under what circumstances to prescribe thorazine to their patients. I have received a small but continuing flow of information about prescription practices in Minnesota from students * *, from other Licensed Consulting Psychologists in the state, and from people for whom such drugs have been prescribed."

Clearly, plaintiffs' expert does not have the practical knowledge and experience contemplated by the medical witness rule. We hold, as a matter of law, that Dr. Rucker was not competent to give an opinion on the standard of medical care required of Dr. Eustermann nor to give an opinion on whether Dr. Eustermann had departed from that standard, much less to characterize the degree of that departure.

 As mentioned earlier, plaintiffs submitted a supplemental letter from Dr. Rucker to the trial court at the time of the hearing on the motion for summary judgment. The trial judge refused to consider the letter in making his ruling because it was not made part of the record and because the letter was written by Dr. Rucker "not only as a medical expert but also as a legal advisor" and was an opinion on the very question at issue. Strictly speaking, Dr. Rucker's letter is not part of the record. It was unsworn, see Minn.R.Civ.P. 56.05, and was untimely presented, see Minn.R.Civ.P. 56.03. Nevertheless, it seems to us these technical defects should not in this instance preclude consideration

of the letter, particularly since defendant's attorney made at best an extremely vague objection to its consideration.[1] Nor do we understand the trial judge to have relied so much on the technicalities of making a record as on the fact that the contents of the letter were argumentative and incompetent evidence. Dr. Rucker begins his letter by stating he is responding to the request of plaintiffs' counsel to address the issue of whether the defendant had shown a willful indifference to the rights or safety of others in his treatment of Judith Lundgren, and his letter then proceeds, simply elaborating on the essential facts already in the record, to argue that, indeed, the defendant doctor had shown such willful indifference. It seems to us that Dr. Rucker's letter adds nothing to what was already in the record. As for the opinions expressed in the letter, we need only say that since Dr. Rucker was not qualified to give opinions on the defendant's conduct in the answers to interrogatories, neither was he qualified to elaborate on these opinions in his subsequent letter.

 The case comes to us in a rather odd posture. Defendant chose to limit his summary judgment motion to only the punitive damages claim. Consequently, the trial court assumed *arguendo* that the facts presented a jury issue on negligence (presumably if supplemented by testimony of a qualified medical expert). The trial court then ruled that any negligence here "cannot be elevated to justify a punitive award on the basis of the conclusionary statements" of an unqualified expert. It is incumbent on the party opposing a summary judgment motion made on depositions or affidavits to counter with sufficient specific facts to raise a jury issue. *See, e.g., County of Hennepin v. Mikulay,* 292 Minn. 200,

1. We do not mean to minimize the importance of making a proper record for a summary judgment motion. As Professor Moore has commented, in addition to the pleadings, affidavits and depositions, the trial court in deciding a motion may consider oral testimony, facts subject to judicial notice, stipulations, concessions of counsel, and any other material that would be admissible in evidence or otherwise usable at

trial. 6 J. Moore & J. Wicker, *Federal Practice* ¶ 56.15[7] (1985). The informality which sometimes accompanies motion practice should not, however, lull counsel into taking less care in making their record for summary judgment than they would for a trial. It is important, both for clarity and fairness, that court and counsel all know and agree on the contents of the record.

194 N.W.2d 259 (1972); *Morgan v. McLaughlin,* 290 Minn. 389, 188 N.W.2d 829 (1971). We agree with the trial judge that there is no evidence of any willful indifference by the defendant's doctor to his patient's rights or safety, as required by Minn.Stat. § 549.20 (1984). Plaintiffs argue that defendant's failure to keep a medical record of any monitoring of the drug's side effects on his patient somehow constitutes willful indifference. Assuming this lack of documentation fails to meet the standard of care required of a physician, something more egregious is required in this case to afford a basis for the extraordinary sanction of punitive damages.

We hold, therefore, that the evidence presented is insufficient, as a matter of law, to present any genuine issue of material fact on the claim for punitive damages. We affirm the trial court's ruling granting defendant partial summary judgment on punitive damages.

While we agree with the court of appeals that summary judgments are to be granted with caution, we do not think that necessarily "[t]he better practice is for the trial court to make the decision [on the punitive damages claim] in the absence of the jury after all the evidence has been heard." *Lundgren,* 356 N.W.2d at 766. It depends on the facts of each case. When punitive damages are injected into a case, the defendant's reputation as well as his money become involved, and the litigation can assume a different dimension. Arguments and evidence that might otherwise not be relevant and indeed might be prejudicial (*e.g.,* the defendant's wealth and talk about punishment) may become admissible. Because of these concerns, we have said, " '[T]he very power of the remedy demands that judges exercise close control over the imposition and assessment of punitive damages.' " *Eisert v. Greenberg Roofing, Etc.,* 314 N.W.2d 226, 229 (1982), *quoting* Mallor & Roberts, *Punitive Damages: Toward a Principled Approach,* 31 Hastings L.J. 639, 670 (1980). Judge Donald D. Alsop and David F. Herr have observed: "Notwithstanding the stringent standard applied to summary judgment motions, there are punitive damages cases in which summary judgment is appropriate." Alsop & Herr, *Punitive Damages in Minnesota Products Liability Cases: A Judicial Perspective,* 11 Wm. Mitchell L.Rev. 319, 327 (1985). While the authors were discussing punitive damages in products liability cases, the comment is no less apt in professional malpractice cases. This is one of those cases where the facts presented on a summary judgment motion simply fail to raise a fact issue on punitive damages.

The decision of the court of appeals is reversed, the partial summary judgment granted by the trial court is reinstated and affirmed, and the case is remanded to the trial court for further proceedings on the remaining issues.

Reversed.