The HOUSING AND REDEVELOPMENT AUTHORITY IN AND FOR THE CITY OF RICHFIELD, Petitioner, Respondent,

v.

WALSER AUTO SALES, INC., et al., Appellants.

No. C8–01–309.

Court of Appeals of Minnesota.

July 3, 2001.

Bradley J. Gunn, Carolyn Veehoff Wolski, Leonard Street & Deinard, Minneapolis, MN and Bruce D. Malkerson, Malkerson Gilliland & Martin, L.L.P., Minneapolis (for appellants).

John M. LeFevre, Jr., Corrine H. Thomson, Joe Yao–Chou Yang, Kennedy & Graven, Chartered, Minneapolis (for respondent).

Considered and decided by
TOUSSAINT, Chief Judge, RANDALL, and HARTEN, Judges.

## OPINION

HARTEN, Judge

The district court granted a quick-take condemnation pursuant to Minn.Stat. § 117.042 (2000) to respondent Housing and Redevelopment Authority for the City of Richfield. Appellants Walser Auto Sales, Inc., Motorwerks, Inc., R.J. Walser, Paul Walser, and Andrew Walser contend that the taking was not authorized by law and was not supported by findings of public purpose and necessity. Respondent alleges that the appeal is moot because it has acquired title to the property. Because we conclude that the appeal is not moot, we address the merits and affirm.

## FACTS

Respondent Housing and Redevelopment Authority for the City of Richfield (the HRA) commenced this condemnation action to acquire real property belonging to appellants Walser Auto Sales, Inc., Motorwerks, Inc., R.J. Walser, Paul Walser, and Andrew Walser (Walser). Appellants objected to the condemnation petition. The district court held an evidentiary hearing on respondent's motion for condemnation.

By order dated January 19, 2001, the district court concluded:

(1) That the HRA's petition is granted and the HRA is authorized by law to acquire the real estate described in its petition herein, as amended, under the procedures specified in Minn.Stat. Chapter 117 (1998) and other law.

(2) That the HRA has shown that the taking is for a public use and purpose, is necessary and convenient in furtherance of a redevelopment project within the City of Richfield, and that the acquisition is required prior to the filing of an award of commissioners.

(3) That the HRA has complied with all the legal requirements for obtaining title and possession pursuant to Minn. Stat. § 117.042 (1998) subject to Walsers' right to remain on the property pursuant to a lease (approved by the Court if the parties cannot agree or other arrangements agreed to by the parties) until 12:00 midnight on June 15, 2001.

Respondent subsequently obtained title to the property by depositing the appraised value of the property with the district court and by recording the required instruments. On February 16, 2001, appellants filed their notice of appeal. Appellants did not seek a stay or post a supersedeas bond to prevent respondent from obtaining title. On March 16, 2001, respondent conveyed title to Best Buy Co., Inc.

■ While this appeal was pending, respondent moved to dismiss the appeal as moot and appellants moved to expedite the appeal. By special term order, this court denied both motions. The order stated that the opinion addressing the merits of the appeal would also discuss the parties' motions.[1]

1. Appellants' motion to expedite this appeal was denied for the following reasons. Appellants did not seek a stay or a supersedeas bond. The day of the appeal, respondent acquired title to the property under Minn. Stat. § 117.042. Later, appellants formally moved the district court to stay enforcement of the January 19, 2001, order until June 15,

## ISSUES

1. Did the district court err in granting the condemnation petition?
 a. Was the taking of appellants' property authorized by law?
 b. Was the taking of appellants' property for a public use and purpose?
 c. Was the taking of appellants' property necessary?

2. Is this appeal moot?

## ANALYSIS

### 1. Condemnation Petition

 "Our scope of review in a condemnation case is very narrow." *County of Dakota (C.P.46–06) v. City of Lakeville*, 559 N.W.2d 716, 719 (Minn.App.1997) (citing *City of Duluth v. State*, 390 N.W.2d 757, 763 (Minn.1986)).

> Great weight must be given to the determination of the condemning authority, and the scope of review is narrowly limited. If it appears that the record contains some evidence, however informal, that the taking serves a public purpose, there is nothing left for the courts to pass upon. * * * The court is precluded from substituting its own judgment for that of the [public body] as to what

may be necessary and proper to carry out the purpose of the plan.

*In re Minneapolis Cmty. Dev. Agency (MCDA) v. Opus N.W., L.L.C.*, 582 N.W.2d 596, 598 (Minn.App.1998) (quoting *City of Duluth*, 390 N.W.2d at 763 (quoting *Housing & Redev. Auth. v. Minneapolis Metro. Co.*, 259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960))), *review denied* (Minn. Oct. 29, 1998).

> Public purpose and necessity are questions of fact, and the district court's decisions on these matters will not be reversed on appeal unless clearly erroneous.

*MCDA*, 582 N.W.2d at 599 (citing *State by Humphrey v. Byers*, 545 N.W.2d 669, 672 (Minn.App.1996)).

### a. Taking Authorized by Law

 Appellants contend that the taking of their property was not authorized by law because the HRA lacked jurisdiction or authority to bring this condemnation action. However, pursuant to Minn.Stat. § 469.012, subd. 1(6) (2000), the HRA may

> acquire real property which it may deem necessary for its purposes, after the adoption by it of a resolution declaring

---

2001, to preclude transfer of the property to third parties until that time, and to condition a stay on appellants' posting of a supersedeas bond. The district court (a) ruled that, because title had already transferred to respondent, it lacked jurisdiction to grant a stay; (b) noted respondent's claim that a stay could cause millions of dollars in damages; (c) stated that if the court of appeals concluded the district court had jurisdiction to grant a stay, the appropriate bond amount was $15 million; and (d) stayed its order for 48 hours or until further order of the court of appeals. Instead of seeking relief from the district court's order, appellants, two months later, moved to expedite the appeal, seeking an opinion by "early June [2001]." Absent agreement of the parties, an early-June opinion would not have been final before appel-

lants had to vacate the property on June 15, 2001. Minn. R. Civ.App. P. 136.02. Appeals may be expedited for good cause. Minn.App. Spec. R. Pract. 1. Here, however, appellants have not specifically identified the good cause supporting their request to expedite and any need to expedite could have been avoided if appellants had posted a supersedeas bond when they appealed. Alternatively, appellants could have used the 48–hour window in the district court's order to challenge that order. Appellants did neither. Their motion to expedite is functionally an attempt to circumvent the posting of a supersedeas bond they claim they cannot post but the terms of which they have not challenged. We decline to expedite the appeal under these circumstances.

that the acquisition of the real property is necessary to eliminate one or more of the conditions found to exist in the resolution adopted pursuant to section 469.003 * * *.

And in the memorandum of law accompanying its order granting the condemnation petition, the district court stated:

Minn.Stat. § 469.003 states that the HRA may not transact any business or exercise any powers until it has "by resolution, [found] that in the city (1) substandard, slum, or blighted areas exist which cannot be redeveloped without government assistance." There is no dispute that the HRA was created in 1974 in accordance with Minn.Stat. § 469.003 by adoption of Resolution No. 5238. Thus, when the HRA adopted Resolution No. 771, which included a finding that it was necessary to acquire the Subject Property to eliminate blight and structurally substandard buildings, it authorized a taking whose purpose was to eliminate the conditions found to exist in Resolution No. 5238. Accordingly, pursuant to the express language of Minn.Stat. § 469.012, subd. 1(6), the Petition should be granted because the HRA was duly created pursuant to Minn.Stat. § 469.003 by virtue of Resolution No. 5238 and the HRA adopted a resolution authorizing acquisition of the Subject Property in order to eliminate conditions that were specified in Resolution No. 5238.

■ Appellants argue that the taking violated the Minnesota Environmental Policy Act (MEPA), Minn.Stat. Chapter 116D. They contend that the City of Richfield and the HRA "wrongfully took numerous actions, including the HRA's presentation of its petition for condemnation to the Court, before the environmental review process had been completed." Appellants rely on Subparts 1 and 2 of Minnesota Rule 4410.3100, which read as follows:

Subpart 1. **Prohibitions.** If an EAW or EIS is required for a governmental action under parts 4410.0200 to 4410.7500, or if a petition for an EAW is filed under part 4410.1100, *a project may not be started* and a final governmental decision may not be made to grant a permit, *approve a project, or begin a project, until:*

A. a petition for an EAW is dismissed;

B. a negative declaration on the need for an EIS is issued;

C. an EIS is determined adequate; or

D. a variance is granted under subparts 3 to 7 or the action is an emergency under subpart 8.

Subp. 2. **Public projects, prohibitions.** If *a project* subject to review under parts 4410.0200 to 4410.7500 is proposed to be carried out or sponsored by a governmental unit, *the governmental unit shall not take any action with respect to the project, including the acquisition of property, if the action will prejudice the ultimate decision on the project,* until a petition has been dismissed, a negative declaration has been issued, or until the final EIS has been determined adequate by the RGU or the EQB, unless the project is an emergency under subpart 9 or a variance is granted under subparts 4 to 8. An action prejudices the ultimate decision on a project if it tends to determine subsequent development or to limit alternatives or mitigative measures.

(Emphasis added.)

■ Respondent correctly points out that appellants have not established any prejudice. Appellants may not establish prejudice with mere allegations; they must present "evidence establishing that the agency's review was compromised." *In re Univ. of Minnesota,* 566 N.W.2d 98,

106 (Minn.App.1997). The district court found no such prejudicial evidence. Instead, it stated:

> Now that the final EIS has been determined adequate, there is no reason that the condemnation action should not proceed and the HRA acquire the land. This Court finds Walser's MEPA argument is moot. The final EIS has been determined adequate; there is no reason the property acquisition may not proceed.

Finally, appellants contend that the HRA failed to comply with the applicable relocation regulations. The district court, however, in finding of fact No. 45, found

> [t]hat the relocation services and assistance that the City has provided to the Walsers consists of a letter dated September 13, 2000, from the City's relocation consultant to Walser Buick Isuzu. The Walsers misinterpreted the letter and ignored it.

The evidence supports this finding; the district court properly rejected appellants' claims relating to relocation assistance.

We conclude that the district court lawfully approved the taking of appellants' property.

**b. Public Purpose**

■ Appellants argue that the evidence does not support the district court's finding that the taking serves a public purpose.

[I]n light of the deferential scope of review, this court has construed the words "public use" broadly. Historically, the court has used the words "public use" interchangeably with the words "public purpose," thus implying that even though a public entity, using its eminent domain powers, turns over parcels to a private entity for use by that private entity, the condemnation will, nevertheless, be constitutional if a public purpose is furthered by such a transfer of land.

*City of Duluth v. State,* 390 N.W.2d 757, 763 (Minn.1986).

Minn.Stat. § 469.012, subd. 1(6), authorizes the HRA to condemn real property if it "is necessary to carry out a redevelopment project." Minn.Stat. § 469.002, subd. 14 (2000), defines a "redevelopment project" as "any work or undertaking" to "acquire blighted areas and other real property for the purpose of removing, preventing, or reducing blight, blighting factors, or the causes of blight."

■ In its memorandum of law, the district court stated:

> In Resolution No. 771 authorizing the HRA's use of eminent domain to acquire the Subject Property, the HRA found that it was necessary to acquire the Subject Property in order to "deal with properties that are structurally substandard and to eliminate and prevent the development or spread of conditions of blight found to exist by the City and HRA." In addition, the Petition alleges that it is necessary and for a public purpose to acquire the Subject Property to implement the Redevelopment Plan, as modified by the Modification and consistent with the findings in HRA Resolution No. 771. Thus, the HRA, by Resolution No. 771 and the Petition, has made a prima facie showing that the acquisition of the Subject Property is necessary for a public purpose.

■ Appellants, however, contend that the property in question is not a blighted area. Minn.Stat. § 469.002, subd. 11 (2000), defines "blighted area" as

> any area with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation,

light, and sanitary facilities, excessive land coverage, deleterious land use, or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.

Bruce Palmborg, the director of community development for the City of Richfield, testified about the conditions of blight in the project area. Palmborg testified that incompatible land uses, such as the proximity of auto dealerships to residential areas, constituted blight. Palmborg testified that neighborhood residents repeatedly complained about traffic safety concerns caused by the demonstration driving of cars in the neighborhood and by customers short-cutting through the neighborhood to get to the car dealerships. Palmborg testified that residents also complained of excessive noise, created by APA systems used to contact people out on the car lots, which spilled over into the adjoining neighborhood.

Tom Goodoien, a consultant with over 35 years of experience in conducting building analyses for establishment of redevelopment projects and tax increment financing districts, prepared a report on the commercial properties in the project area. Goodoien concluded:

The building conditions were analyzed to ascertain qualifiers pertinent to Minnesota Statutes * * *. The commercial spaces are not necessarily obsolete for their present or continued use but are functionally obsolete for commercial spaces serving the public patron and lack certain life safety factors, elements of the Americans with Disabilities Act (ADA) and obsolete mechanical systems essential for quality tenant space.

Also the proposed project area is environmentally "blighted" with many properties exposed to hazardous traffic patterns, merging and "jockeying" vehicles

on narrow streets, the existence of diverter barriers and lacking adequate parking facilities (resulting in cars parked on sidewalks) all impeding the smooth flow of traffic in an area lacking adequate infrastructure. Poor interior traffic patterns are addressed inappropriately by using diverter crash walls in main arterial streets, which disrupts and impedes the flow of traffic and prohibits normal snow removal. Many commercial uses are too intense with trucks unloading from the street due to inadequate off street parking causing hazardous conditions to pedestrians, and insufficient space to maneuver trucks.

It is apparent that these conditions constitute obsolescence, overcrowding, and faulty arrangement or design, that are detrimental to the safety and welfare of the community within the definition of blight under Minn.Stat. § 469.002, subd. 11. Moreover, the district court found that Resolution No. 771, the 1993 Redevelopment Plan, the 1999 Modification, all of the staff reports relating to the Modification and Redevelopment Plan, and the "experience and knowledge of staff, council[,] and board members supported the findings that conditions of blight existed in the Project area." Given the holding in *Housing & Redev. Auth. v. Minneapolis Metro. Co.*, 259 Minn. 1, 7, 104 N.W.2d 864, 869 (1960), that "the acquisition and clearing of blighted areas serve a public purpose," and the HRA's statutory authority to condemn the property to eliminate and prevent blight, we conclude that the district court did not clearly err in finding that the taking was for a public purpose.

**c. Necessity**

 Appellants argue that the evidence does not support the district court's finding that the taking was necessary.

*Absolute necessity* is not required for a finding of public purpose, rather it is enough to find that the proposed taking is *reasonably necessary* or *convenient* for the furtherance of a proper purpose.

*MCDA*, 582 N.W.2d at 600 (quotations omitted). Appellants contend that "there is no evidence that other alternatives were even explored." But, "[a] party challenging the necessity of the condemnation of a parcel will not succeed by merely suggesting alternatives to the government's plan." *Id.* (citing *City of Duluth*, 390 N.W.2d at 766).

■ Appellants argue that the project was too speculative because permits and approvals still need to be obtained and because the agreement contained contingencies that allowed Best Buy to abandon the project. Appellants rely on the statement in *Regents of Univ. of Minnesota v. Chicago & N.W. Transp. Co.*, that "[s]peculative purposes will not support the assertion of necessity." *Regents of Univ. of Minnesota v. Chicago & N.W. Transp. Co.*, 552 N.W.2d 578, 580 (Minn. App.1996) (quotation omitted), *review denied* (Minn. Nov. 20, 1996). But appellants' reliance is misplaced. In *Regents*, we held that because the university had "not yet approved a single project for the property," it could not acquire the property "for speculative future use (stockpiling) by condemnation." *Id.* Here, the HRA has identified the Best Buy headquarters as the project for which the property is necessary. Contingencies, such as the permits and approvals remaining for this project, are normal contingencies for a major redevelopment project. *See MCDA*, 582 N.W.2d at 597 ("Public purpose and necessity cannot be thwarted * * * by alleging that the purpose for condemning the property is too speculative if in fact the project is officially supported by the governmental entity and ordinary agreements are in place to realize the project."). We conclude that the district court did not clearly err in finding that the condemnation was "necessary and convenient in furtherance of a redevelopment project."

## 2. Mootness

■ Respondent argues that this appeal is moot because it acquired title to a fee simple interest in the property and Minn.Stat. § 117.215 (2000) provides that a condemning authority takes a fee simple interest in property for public use "without any right of reversion under any circumstances." But Minn.Stat. § 117.215 applies *if* property is taken for a public use. Here, the *existence* of a public use and the necessity of the taking are at issue and title was acquired through quick-take proceedings. If transfer of title were held to moot any challenge to the public use and the necessity, condemning authorities could insulate those elements from judicial review in quick-take acquisitions. Such a holding would run counter to *County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647, 649–50 (Minn.1978) (allowing interlocutory appeal of a district court order finding the existence of public necessity).

■ *Stauffenberg* also vitiates respondent's argument that Minn.Stat. § 117.215 precludes a court from directing that title be returned to a condemnee.

Although the taking may be completed when the necessity issue is finally reviewed by [an appellate court], the governmental body which took the disputed property can be compelled to return it to its previous owner.

*Id.* at 649–50. *See also In re Rapp*, 621 N.W.2d 781, 784 (Minn.App.2001) ("[a]lthough Rapp's land has been condemned and a highway built across it, Rapp still has relief in the form of the return of the

property" (citing *Stauffenberg,* 264 N.W.2d at 650)).[2]

Respondent also argues that the appeal is moot because appellants' failure to post a supersedeas bond allowed respondent to acquire title to the property. For purposes of the motion to dismiss, however, the question is whether title can be transferred back to appellants. Therefore, *Stauffenberg* and *Rapp* address this aspect of respondent's argument and indicate that this appeal is not moot.

## DECISION

The district court did not clearly err in granting the condemnation petition; its findings that the taking of appellants' property was authorized by law, was for a public purpose, and was necessary, are supported by the evidence and are not clearly erroneous. The appeal is not moot because property can be ordered returned in the absence of a proper showing of public use.

**Affirmed.**

---

2. Respondent also alleges *Rapp* is distinguishable because the lack of briefing of mootness may have resulted in this court not making a fully-considered decision. We decline to hold that *Rapp* was wrongly decided because it admitted the existence of a remedy which the supreme court had previously indicated was available.