The HOUSING AND REDEVELOPMENT AUTHORITY in and for the CITY OF RICHFIELD, Respondent,

v.

WALSER AUTO SALES, INC., et al., Petitioners, Appellants,

R.J. Walser, et al., Petitioners, Appellants.

No. C8–01–309.

Supreme Court of Minnesota.

April 18, 2002.

Rehearing Denied May 22, 2002.

Bradley J. Gunn, Carolyn V. Wolski, Minneapolis, for Appellants Walser Auto Sales Inc. and Motorwerks, Inc.

Bruce D. Malkerson, Malkerson, Gilliland & Martin, LLP, Fred L. Morrison, University of Minnesota Law School, Minneapolis, Christopher J. Dietzen, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for Appellants R.J. Walser, Paul Walser & Andrew Walser.

John M. LeFevre, Jr., Corrine H. Thomson, Stephen J. Bubul, Kennedy & Graven, Minneapolis, for Respondent The Housing & Redevelopment Authority in & for the City of Richfield.

Susan L. Naughton, League of Minnesota Cities, St. Paul, for Amicus Curiae League of Minnesota Cities and Minnesota Chapter of the National Association of Housing and Redevelopment Officials.

James W. Schutjer, Minnesota Automobile Dealers Association, St. Paul, for Amicus Curiae Minnesota Automobile Dealers Association.

Karen A. Schaffer, Minnesota County Attorneys Association, Hastings, for Ami-

cus Curiae Minnesota County Attorneys Association.

## OPINION

GILBERT, Justice.

In July, 2000, respondent Housing and Redevelopment Authority for the City of Richfield commenced a quick take condemnation pursuant to Minn.Stat. § 117.042 (2000) to acquire real property owned by appellants Walser Auto Sales, Inc., Motorwerks, Inc., R.J. Walser, Paul Walser, and Andrew Walser. Appellants objected to the condemnation petition and the district court held a trial. In January 2001, the court granted respondent's petition. This case presents the issue of whether an appeal challenging the public purpose of a quick take condemnation pursuant to Minn.Stat. § 117.042 is moot based either on reciprocal vesting at the time the property was transferred to respondent or on subsequent changes to the property after judgment was entered by the district court on the public purpose challenge to respondent's use of eminent domain. We also granted review of the court of appeals decision affirming the district court.

In 1993, respondent and the City Council of the City of Richfield (City) passed resolutions approving a Redevelopment Plan for the Richfield Redevelopment Project Area (1993 Redevelopment Plan). This plan grouped the previous redevelopment projects and additional property into one comprehensive redevelopment plan

that included approximately 90 percent of Richfield, but it did not include appellants' property. In May 1999, respondent recommended that the City adopt a resolution to modify the 1993 Redevelopment Plan to include the Interchange West Area, an area bounded by Penn Avenue on the west, 76th Street on the north, Knox Avenue on the east, and 78th Street on the south. This area included appellants' property. A public hearing was held on June 14, 1999 and the City passed a resolution authorizing the Modification of the 1993 Redevelopment Plan so that it would include the Interchange West Area.

Around August 1999, Best Buy Co., Inc. (Best Buy), identified the Interchange West Area as a possible site for a new corporate headquarters. On March 28, 2000, respondent and Best Buy entered into a contract for private development of the Interchange West Area. This contract required Best Buy to make diligent efforts to negotiate the purchase of the buildings located in the Interchange West Area. Despite Best Buy's efforts to do so, Best Buy was unable to negotiate a deal to purchase appellants' property. As a result, sometime between April and July 2000, Best Buy requested that respondent acquire this property through the use of eminent domain.

On July 17, 2000, respondent passed a resolution authorizing the use of eminent domain to acquire property owned by appellants. Respondent then filed a petition in Hennepin County District Court seeking to acquire appellants' property pursuant to a "quick take" under Minn.Stat. § 117.042.[1] Appellants challenged the quick take and a trial was held. On Janu-

---

1. Pursuant to Minn.Stat. § 117.042, a petitioner is allowed to obtain title and possession of all or part of an owner's property prior to

filing of an award by court appointed commissioners on payment or deposit with the

ary 19, 2001, the district court granted respondent's petition and entered judgment authorizing a quick take, subject to appellants' right to remain on the property pursuant to a lease until midnight on June 15, 2001. The court also ordered the transfer of title to respondent subject to it depositing the approved appraised value of the property with the court and filing the order with the appropriate recording agency.

On February 16, 2001, appellants filed their notice of appeal but did not move for a stay of the January 19, 2001 order or post a supersedeas bond. On March 9, 2001, appellants moved the district court for a stay to prevent respondents from transferring title to Best Buy. The court denied appellants' request for a stay, concluding that it had no jurisdiction to stay the transfer from respondent to Best Buy because the transfer from appellants to respondent had already occurred. This order also provided that in the event the court of appeals were to conclude that the district court had jurisdiction, appellants would be required to post a supersedeas bond in the amount of $15 million. The court stayed the effect of its order for 48 hours, allowing appellants time to appeal to the court of appeals. Appellants did not appeal and respondent transferred title to the property to Best Buy on March 16, 2001.

On July 3, 2001, the court of appeals affirmed the district court, concluding that appellants' appeal was not moot and that the district court did not clearly err in granting respondent's condemnation petition. *Housing and Development Auth. in and for the City of Richfield v. Walser Auto Sales, Inc.*, 630 N.W.2d 662, 671 (Minn.App.2001). Specifically, the court

held that the appeal was not moot because property acquired through the use of eminent domain can be ordered returned in the absence of a proper showing of public purpose. *Id.* However, the court of appeals concluded that the district court's findings, including that the property was taken for a public purpose, were not clearly erroneous. *Id.* Since this holding, construction on the property has continued to move forward. Therefore, we allowed the parties to submit a supplemental record on the mootness issue related to the events that have occurred since the district court's order. In reviewing this supplemental record, we consider only those documents containing undisputed facts and take judicial notice of the fact that the judgment was recorded to transfer title, all of appellants' buildings have been demolished, and some buildings have been constructed on portions of the property.

■ We must first address the mootness issue for when an event occurs pending appeal that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot. *See In re Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn.1997). An issue is not moot if a party could be afforded effectual relief. *See In re Schmidt*, 443 N.W.2d 824, 826 (Minn.1989). Respondent argues that the appeal in this case is moot for two reasons. First, respondent argues that appellants' public purpose challenge became moot upon the transfer of title to the property to respondent because the rights of both parties became reciprocally vested at that time. Second, respondent argues that even if the parties' rights did not reciprocally vest upon the transfer of title, the events that have occurred subsequent to

court of an amount equal to the petitioner's appraisal of value.

the transfer of title have rendered appellants' public purpose challenge moot.

■ In *State ex rel McFarland v. Erskine,* we held:

In every form of procedure for appropriating land for the public use, there must be a point where the right of the condemner to abandon the proceeding is lost and the right of the landowner to compensation becomes vested. As a general rule the condemner cannot deprive the landowner of a vested right to compensation by abandoning the proceeding. The theory upon which [this] rule is based is that, upon final termination of the proceeding, the right of the condemner to take and hold the land and the right of the landowner to the money are correlative and coincident and vest simultaneously in the respective parties.

165 Minn. 303, 307, 206 N.W. 447, 449 (1925). We have followed this rule of reciprocal vesting in subsequent cases. *See County of Hennepin v. Mikulay,* 292 Minn. 200, 212–13, 194 N.W.2d 259, 266–67 (1972); *Independent School Dist. No. 273 v. Gross,* 291 Minn. 158, 167–68, 190 N.W.2d 651, 657–58 (1971); *State, by Lord v. Myhra G.M.C. Truck & Equip. Co.,* 254 Minn. 17, 20, 93 N.W.2d 204, 206 (1958). However, the concept of reciprocal vesting only arises "upon final termination of the proceeding" when the right of the condemning authority to take and hold the land gives rise to the right of the landowner to compensation for the taking. *Erskine,* 165 Minn. at 307, 206 N.W. at 449. Here, there was not a final termination of the proceeding when the appeal was taken because the crux of the appeal, whether respondent ever had the right to take and hold appellants' property, had not been finally resolved.

■ The dispute over respondent's right to take appellants' property makes this case fundamentally different from the line of cases relied upon by respondent. Specifically, in those cases there was no issue on appeal as to the condemning authority's right to take the land at issue; rather, the reciprocal vesting doctrine was invoked to enforce an owner's right to payment when the condemning authority, without the consent of the landowner, sought to abandon, dismiss, or discontinue the condemnation proceedings. *See City of Maplewood v. Kavanagh,* 333 N.W.2d 857 (Minn.1983); *Mikulay,* 292 Minn. 200, 194 N.W.2d 259; *Gross,* 291 Minn. 158, 190 N.W.2d 651; *Myhra,* 254 Minn. 17, 93 N.W.2d 204; *Erskine,* 165 Minn. 303, 206 N.W. 447. In each of these cases, the party from whom the property was taken either voluntarily surrendered possession or did not challenge the condemning authority's right to exercise its power of eminent domain and the condemning authority desired to terminate the proceedings. The reciprocal vesting doctrine was adopted in part to protect landowners from being harassed and forced to expend more time and money defending against multiple and successive condemnation actions on the same property. *See Kavanagh,* 333 N.W.2d at 861. In this case, there is no doubt that if respondent had a right to take appellants' property, appellants have a right to compensation. However, when a condemning authority's right to take a landowner's property has continually been challenged by the landowner and there has not been a final termination of the proceedings, the doctrine of reciprocal vesting cannot be invoked to dismiss an appeal.

Respondent argues for a bright line rule that the parties' rights in this case reciprocally vested the moment title was transferred, thereby rendering appellants' public purpose challenge moot. Respondent

relies primarily on our decision in *Mikulay* to support its argument. However, the only issue we found moot in *Mikulay* was the ejectment case brought by the landowner, which was moot "by virtue of the surrender of possession by the landowners to the county and the county's acceptance of such possession" and the fact that "there [was] nothing for [this court] to decide as far as that appeal [was] concerned." *Mikulay*, 292 Minn. at 205, 194 N.W.2d at 262. As for the public purpose challenge, we refused to "close the door" to a landowner's raising the question of whether the taking was for a public purpose and instead considered the appropriateness of summary judgment in light of the facts in the case. *Id.* at 210, 194 N.W.2d at 265. This consideration indicates that we reviewed the Mikulays' public purpose challenge, even though title had transferred, the county had already taken possession of the land, and the Mikulays had accepted the amount deposited with the court prior to the time the appeal was heard.

As the court of appeals recognized, Minn.Stat. § 117.215 (2000), which provides that a condemning authority takes a fee simple interest without any right of reversion under any circumstances, applies only if property is taken for a public purpose. *Walser*, 630 N.W.2d at 670. The existence of a public purpose is the underlying issue in this case. Despite respondent's suggestion to the contrary, we have never held that a public purpose challenge becomes moot upon the transfer of title and possession. In fact, in *City of Duluth v. State*, we specifically addressed the public purpose issue although title had passed and money had been deposited. 390 N.W.2d 757, 762–64 (Minn.1986). While it is true that the mootness issue was not directly raised in *City of Duluth*, if we

adhered to the bright line rule urged by respondent, we would not have needed to address the public purpose issue on appeal. *See also Minnegasco*, 565 N.W.2d at 710 (noting that when an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot). As the court of appeals noted, if transfer of title were held to moot any challenge to the public purpose, all condemning authorities could insulate the public purpose requirement from judicial review by utilizing the quick-take procedures. This is a rigid rule that does not always satisfy our test for mootness.

We have recognized that equitable relief may remain available even after the condemning authority has acquired title to the property. *See County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647, 649–50 (Minn.1978) (stating that although a taking may be completed by the time the necessity of the governmental taking is finally reviewed by this court, the governmental body that took the property can be compelled to return it to its previous owner); *see also In re Rapp*, 621 N.W.2d 781, 784 (Minn.App.2001) (holding that property owner still has relief in the form of the return of his property though condemnation was complete and a highway was constructed across the property). Adopting respondent's bright line rule would result in effectively holding that, in all public purpose challenges, even if there was an unconstitutional taking, the transfer of title immediately renders any effective relief impossible at any point thereafter. In this case, such a holding would mean that the appeal became moot not on January 19, 2001 (the date of the judgment), but immediately after respondent recorded the judgment to transfer the title to respondent on February 13, 2001. However,

891

there is nothing in the record to indicate that effective relief, including the return of all or a portion of appellants' property, would not have been possible on February 14, 2001 or thereafter. Therefore, we hold that appellants' appeal did not become moot upon the recording of the judgment to transfer title to the property to respondent.

■ Respondent further argues that the appeal is moot because physical changes to the Interchange West Area have made it impossible to return appellants' property in the condition it existed prior to respondent's acquisition of title. This appeal is not moot if appellants could be afforded effective relief. *See Schmidt*, 443 N.W.2d at 826. The subsequent events brought on solely by respondent while facing a public purpose challenge on appeal may be considered when deciding what relief is available but they are not dispositive of the appeal. Respondent concedes that there is some doubt about the feasibility of reconstruction or whether some of the property in dispute can be deeded back. This uncertainty, coupled with the factual disputes between the parties relating to the present conditions and feasibility of reconstruction on this record makes it unclear what portions, if any, of this property could be transferred back without causing an absurd result. Since respondent may be compelled to return all or part of appellants' property if it took the property in an unconstitutional manner, *see Stauffenberg*, 264 N.W.2d at 649–50, we hold that appellants' public purpose challenge is not moot. We hold this even though the appropriate remedy could be something other than the return of all of the property. The court of

appeals' decision that the appeal is not moot is affirmed on the grounds stated herein.[2]

As to the remaining issues for which we granted review, the court is evenly divided. Therefore, the decision of the court of appeals stands.

Affirmed as to mootness issue.

LANCASTER, J., took no part in the consideration or decision of this case.

2. To hold otherwise would actually insulate and arguably reward condemning authorities who fail to meet the public purpose requirements, but begin improvements prior to the conclusion of the very litigation challenging this authority.