# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2870

_____

D. Christian Wise; Cheryl Wise

*Plaintiffs - Appellants*

v.

Mayo Clinic Rochester

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 17, 2018
Filed: December 19, 2018
[Unpublished]

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

PER CURIAM.

D. Christian and Cheryl Wise sued Mayo Clinic Rochester for medical malpractice and lost. On appeal, they challenge the district court's[1] decision to exclude the testimony of an expert witness at trial. We affirm.

After months of unexplained joint pain in his hips and shoulders, Christian sought treatment from Dr. Thomas Osborn, a rheumatologist at Mayo Clinic Rochester. Dr. Osborn was unable to identify the cause of Christian's pain and scheduled him for another visit. In the meantime, Dr. Osborn prescribed prednisone, a corticosteroid, in increasingly larger doses to treat the pain. Other than telling Christian to taper his dosage over time if possible, Dr. Osborn did not take any steps to counteract the potential side effects of prednisone.

Roughly ten weeks later, Christian again began suffering from pain, this time in his lower back. Another doctor diagnosed him with four vertebral compression fractures—possibly caused by steroid-induced osteoporosis, a side effect of prednisone. He eventually underwent back surgery to fix the damage.

The Wises filed a lawsuit in federal district court against Mayo Clinic Rochester for medical malpractice. Their theory was that Dr. Osborn should have done more to counteract the bone-depleting side effects of prednisone. Their only expert witness on this point was Dr. Harold Rosen, an endocrinologist who specializes in treating patients with osteoporosis and has researched the risks of prednisone. He was prepared to testify that Dr. Osborn failed to exercise reasonable care when he prescribed prednisone without taking additional precautions to combat its side effects.

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

Midway through trial, the defense challenged Dr. Rosen's ability to provide expert medical testimony in the case. After both sides had a chance to question Dr. Rosen, the district court ruled that he was "not qualified to testify regarding the standard of care for prescribing prednisone under these circumstances" because he did not have "practical training or experience with the specific treatment at issue." Without an expert to testify on the standard of care, the Wises could not prove their case. *See Bigay v. Garvey*, 575 N.W.2d 107, 111 n.4 (Minn. 1998) (explaining that expert testimony on the applicable standard of care is required in a medical-malpractice case). Accordingly, the district court granted judgment as a matter of law to Mayo Clinic Rochester.

The Wises argue that the district court abused its discretion when it excluded Dr. Rosen's testimony. *See Stowell v. Huddleston*, 643 F.3d 631, 634 (8th Cir. 2011). Because this is a diversity action arising under Minnesota law, Minnesota's expert-witness rules apply. *See id.* at 633–34.

To testify about the standard of care, a proposed medical expert must have "both sufficient scientific knowledge of and some practical experience with the subject matter of the offered testimony." *Cornfeldt v. Tongen*, 262 N.W.2d 684, 692 (Minn. 1977). The dispute here centers on the second requirement, practical experience, and specifically on whether Dr. Rosen possessed "practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted [Dr. Osborn]." *Id.* (citation omitted); *see also Stowell*, 643 F.3d at 637 (stating that a court should not define the relevant circumstances so broadly "that it enables an otherwise unqualified witness to offer expert opinion"). Here, the relevant circumstance was having prescribed prednisone to a patient like Christian who suffered from unexplained joint pain.

Dr. Rosen acknowledged that he did "not see patients in [this] setting" and that he did not have "practical knowledge" of how a doctor would "usually and

customarily" treat a patient like Christian. And he conceded that he prescribed prednisone to his patients only "[i]nfrequently."

To be sure, Dr. Rosen testified that he had theoretical knowledge about the side effects of prednisone and how to prevent them. This type of knowledge, however, was not a substitute for practical experience. *See Lundgren v. Eustermann*, 370 N.W.2d 877, 880–81 (Minn. 1985) (holding that a proposed witness lacked the requisite practical experience because he admitted that he had never prescribed the drug at issue and did "not know how physicians themselves customarily use[d] [the drug] in treatment of their patients"). The district court accordingly did not abuse its discretion in excluding Dr. Rosen's testimony.

We affirm the judgment of the district court.

_____