*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1548**

Jolene Luczak,
Appellant,

vs.

St. Mary's Medical Center, et al.,
Respondents.

**Filed April 29, 2024
Affirmed
Kirk, Judge***

St. Louis County District Court
File No. 69DU-CV-22-1870

Eric W. Beyer, Amy S. Pendergast, Marcia K. Miller, Sieben Carey, P.A., Minneapolis, Minnesota, (for appellant)

Richard J. Thomas, Chris Angell, Burke & Thomas, PLLP, Arden Hills, Minnesota (for respondents)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.

**NONPRECEDENTIAL OPINION**

**KIRK**, Judge

Appellant challenges the summary-judgment dismissal of her medical-malpractice claim, arguing that the district court abused its discretion by determining that her medical

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

expert, who is an interventional radiologist, is not qualified to testify as to the standard of care applicable to a vascular surgeon whose alleged negligence involved the interpretation of diagnostic images. We affirm.

**FACTS**

In May 2019, appellant Jolene Luczak sought medical care for right calf pain. Dr. Christopher Bunch diagnosed her with claudication (muscle pain from reduced blood flow) due to popliteal artery entrapment syndrome (PAES).[1] PAES is a condition in which the calf muscle presses on the main artery behind the knee, the popliteal artery, making it harder for blood to flow to the lower leg and foot; in Luczak's case, the pressure resulted from the artery's aberrant course around the muscle.

Dr. Bunch referred Luczak to vascular surgeon Dr. Christopher DeMaioribus at respondent The Duluth Clinic Ltd. Dr. DeMaioribus confirmed the diagnosis and discussed two surgical options for addressing her PAES: (1) a bypass, which would involve using a grafted vessel to bypass the area of compression; or (2) a decompression, which would involve division of the calf muscle and moving the popliteal artery into a normal anatomic position so that it would no longer be compressed. Luczak expressed interest in a bypass, and surgery was scheduled for August 26 at respondent St. Mary's Medical Center.

The day of surgery, Dr. DeMaioribus explained to Luczak that he wanted to see what her leg looked like inside and then decide whether to perform a bypass or a

---

[1] Luczak does not allege negligence by Dr. Bunch.

2

decompression; Luczak agreed. During the surgery, Dr. DeMaioribus elected to perform a decompression. After decompressing the artery, he performed an intraoperative angiogram, which showed some residual compression and vasospasm, meaning narrowing or tightening of the artery. He did a balloon angioplasty, inserting a balloon into the artery and inflating it to open the area of vasospasm. He then determined the release was complete and finished the procedure.

Luczak returned to work in late September, but by November her right-calf pain returned. She underwent an ultrasound of her right leg on December 3, and a magnetic resonance angiogram (MRA) of her legs on January 15, 2020. The MRA showed abnormal narrowing within the right popliteal artery.

At a follow-up appointment on February 5, Dr. DeMaioribus reviewed the MRA and agreed it showed residual narrowing of Luczak's right popliteal artery. Dr. DeMaioribus recommended an angiogram and nonsurgical treatment.

Dr. DeMaioribus performed the angiogram on February 11. It revealed what appeared to him to be an obstruction inside the right popliteal artery, rather than compression. Dr. DeMaioribus performed a balloon angioplasty to open the artery, but it yielded no change in the obstruction. He then placed a stent in the popliteal artery, and an angiogram showed what appeared to Dr. DeMaioribus to be normal blood flow.

The following day, February 12, Luczak reported pain in her left groin, the entry site for the angiogram. Luczak underwent a duplex ultrasound to screen for a pseudoaneurysm, which occurs when blood leaking from an injured blood vessel collects

in surrounding tissue; nurse practitioner Laura Winters and Dr. DeMaioribus interpreted the ultrasound as negative for pseudoaneurysm.

On February 14, Luczak again reported continued pain in her left groin and recurrent cramping in her right calf. Winters physically examined Luczak's groin and performed a duplex ultrasound of her right leg. In consultation with Dr. Bunch, she concluded that the stent placed on February 11 was occluded. Dr. Bunch recommended that Luczak follow up with Dr. DeMaioribus.

On February 19, Luczak reported that her groin symptoms were much improved, but she had continued cramping in her left leg. Dr. DeMaioribus reviewed the recent ultrasound and advised that Luczak would require a bypass to alleviate her right leg symptoms; he said that it was not urgent, the symptoms likely would not worsen, and Luczak could go on her planned trip to Colombia.

Luczak left for Colombia on February 21. While there, her groin pain returned, and she sought emergency medical care. Over the course of two weeks, she was treated with antibiotics for infected hematomas, underwent surgery to repair a pseudoaneurysm in her left groin, and underwent a separate surgery to repair a rupture in her left iliac artery. She remained in Columbia to recuperate until March 11.

Two days after Luczak returned to the United States, she was hospitalized again for infection at the site of the surgical incision in her left groin, and two months later, she was hospitalized and had a stent placed to address a pseudoaneurysm at the site of the left iliac artery repair. Her wound fully healed by July 2020, although her PAES remains unresolved.

4

In July 2022, Luczak initiated this action against St. Mary's and The Duluth Clinic (collectively, the clinics), alleging negligence in the form of treatment and diagnostic errors by their agents and employees, principally Dr. DeMaioribus. She later identified Dr. Scott Resnick as her medical expert, submitting his curriculum vitae (CV) and his expert report regarding her care.

Dr. Resnick's CV indicates that he has more than 20 years' experience working as an interventional radiologist and teaching in radiology and vascular surgery departments. And his expert report states that he has "knowledge of and skill in evaluating vascular anatomy, the mechanical forces involved in [PAES], diagnosis and treatment of pseudoaneurysm, and is a true expert in the field of interventional radiology." Dr. Resnick proposes to testify to "the accepted standard of care for diagnosis and management of [PAES] with claudication, angiography, and pseudoaneurysm in the same or similar circumstances." He asserts that Dr. DeMaioribus breached the standard of care in the following ways:

> 1. During the August 26, 2019 surgery, he failed to use plantar flexion maneuvers in connection with the intraoperative angiogram to assess the adequacy of the release of the popliteal artery.
>
> 2. During the August 26, 2019 surgery, he ignored the final intraoperative angiogram, which showed medial bowing of the popliteal artery that suggested incomplete decompression of the artery.
>
> 3. He misinterpreted the postoperative ultrasound in December 2019 and MRA in January 2020 as showing possible intrinsic popliteal stenosis when both clearly showed continuing PAES.

4. He proceeded with an angiogram on February 11, 2020, but the only accepted treatment for continuing PAES was surgery, either another attempt at decompression or a bypass.

5. He placed a stent during the February 11, 2020 angiogram, but a stent is not capable of withstanding external compression of a popliteal artery in a patient with PAES.

6. He failed to identify a pseudoaneurysm shown by the February 12, 2020 ultrasound of Luczak's left groin and failed to order a follow-up ultrasound when her pain continued on February 14, 2020.[2]

The clinics moved for summary judgment, arguing that Dr. Resnick is not qualified as an expert in this case because nothing in his CV indicates that he has "any education, training or experience as a vascular surgeon, in vascular surgery, or surgical treatment of PAES," or that he "has treated patients with PAES or patients who have undergone an attempted surgical repair of PAES." They also proffered an expert report from vascular surgeon Dr. Amy Reed, who questioned Dr. Resnick's qualifications to know the standard of care for a vascular surgeon, particularly with respect to PAES, which she described as "a condition that is treated surgically and is so rare that many vascular surgeons will never perform such a surgery in their entire careers." The clinics argued that, without Dr. Resnick's testimony, Luczak cannot present a prima facie case of medical malpractice and they are entitled to judgment as a matter of law.

In opposing summary judgment, Luczak argued that all six instances of malpractice that she alleges "involve interpretation of radiologic imaging and/or performance of

---

[2] Dr. Resnick also asserted that Dr. DeMaioribus breached the standard of care by obtaining informed consent for a bypass surgery and then performing a decompression surgery, but Luczak later agreed that she is not making a claim for lack of informed consent.

6

angiography," which "are matters that lie squarely within the expertise of Dr. Resnick." She did not address Dr. Resnick's education, training, or experience related to PAES but proffered a supplemental opinion from Dr. Resnick and requested that the court consider it in deciding the clinics' summary-judgment motion. Dr. Resnick's supplemental opinion primarily focuses on his disagreements with Dr. Reed but states, regarding PAES:

> [T]he diagnosis of PAES is typically suggested clinically, and the final diagnosis and classification of PAES is subsequently made via radiographic/diagnostic imaging studies, such as ultrasound, CT, MRI, and angiography with provocative maneuvers. All of these modalities are the purview of the diagnostic/interventional radiologist. So, while the surgical care of PAES lies within the specialty of vascular surgery, the diagnosis of PAES lies within both the specialty of diagnostic/interventional radiology and vascular surgery. In fact, I've seen and personally diagnosed PAES dozens of times in my career.

The district court considered Dr. Resnick's CV, his initial report, and his supplemental report, and determined that Dr. Resnick is not qualified to testify as an expert in this case because he lacks "practical experience in dealing with PAES in surgery and with postsurgical care." Because the district court concluded that excluding Dr. Resnick's testimony means Luczak lacked the necessary medical testimony to present her case to the jury, the district court granted summary judgment in favor of the clinics. Luczak requested leave to move for reconsideration, which the district court denied.

Luczak appeals.

**DECISION**

A district court has "wide latitude" in determining whether there is sufficient foundation to establish that an expert witness is qualified to state an opinion. *Marquardt*

*v. Schaffhausen*, 941 N.W.2d 715, 719 (Minn. 2020) (quotation omitted). We review the district court's decision as to expert qualification under a "very deferential standard" and will not reverse absent a "clear abuse of discretion." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn. 2002) (quotation omitted); *see also Williams v. Wadsworth*, 503 N.W.2d 120, 123 (Minn. 1993) (applying abuse-of-discretion standard when expert-qualification issue arose in summary-judgment context). That we might reach a different conclusion on the matter is an insufficient basis for reversal. *Williams*, 503 N.W.2d at 123.

The expert qualification issue arises here because a plaintiff alleging medical malpractice must present expert medical testimony establishing (1) the standard of care applicable to the defendant's conduct, (2) that the defendant departed from that standard, and (3) that the defendant's departure directly caused the plaintiff's injury. *Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013). That expert opinion testimony "must have foundational reliability." Minn. R. Evid. 702. To demonstrate the requisite foundation, the plaintiff must present evidence that the witness has "both the necessary schooling and training in the subject matter involved, plus practical or occupational experience with the subject." *Marquardt*, 941 N.W.2d at 719 (quotation omitted). This foundation is "best supplied if the expert witness is also a physician, especially a physician in the same area of practice [as the defendant], but this need not always be so." *Lundgren v. Eustermann*, 370 N.W.2d 877, 880 (Minn. 1985); *see also Koch v. Mork Clinic, P.A.*, 540 N.W.2d 526, 529 (Minn. App. 1995) ("[A] medical expert need not have a specialty, experience, or a position identical to a medical defendant."), *rev. denied* (Minn. Jan. 12, 1996). Rather, "it is a practical knowledge of what is usually and customarily done by

8

physicians under circumstances similar to those which confronted the defendant charged with malpractice that is of controlling importance." *Cornfeldt v. Tongen*, 262 N.W.2d 684, 692 (Minn. 1977) (quoting *Swanson v. Chatterton*, 160 N.W.2d 662, 667 (Minn. 1968)).

Luczak argues that the district court abused its discretion by determining that Dr. Resnick is not qualified as an expert in this case because it (1) mischaracterized her claims as surgical error rather than diagnostic and radiological error, and (2) disqualified him simply because he is not a vascular surgeon. This argument is unavailing in both respects.

First, the district court accurately recited the six allegations of medical negligence detailed in Dr. Resnick's report, and it recognized that Luczak does not challenge Dr. DeMaioribus's "surgical decisions." But it disagreed that her allegations concern nothing more than the diagnosis of PAES based on radiological tools: "[D]iagnosis is not what is at issue here. Rather it is the decisions Dr. DeMaioribus made in surgery and with postsurgical care, which happened long after the diagnosis was made." The court reasoned that, "[u]nder these circumstances, [Luczak's] expert would need to be able to show practical experience in dealing with PAES in surgery and with postsurgical care." That context-specific description of the circumstances that inform the applicable standard of care is consistent with caselaw. *See Teffeteller*, 645 N.W.2d at 426-27 (affirming exclusion of pediatrician from opining about failure to diagnose morphine toxicity in child who underwent bone-marrow transplant because he lacked experience treating cancer patients or patients who have undergone bone-marrow transplants); *Swanson*, 160 N.W.2d at 667-68 (affirming exclusion of internist from opining about failure to diagnose complication

9

following surgical treatment of arm fracture because he lacked experience in the direct care of orthopedic patients); *see also Cornfeldt*, 262 N.W.2d at 690-91 (reversing exclusion of internist from opining about suitability for surgery following abnormal laboratory results because he had consulted on such matters, but affirming exclusion as to opinion about administration of general anesthetic because he lacked comparable contextually specific experience). As such, that description is not an abuse of discretion.

Second, the district court excluded Dr. Resnick because Luczak failed to demonstrate that he has the requisite practical experience. Certainly, it is apparent from Dr. Resnick's CV that he is an accomplished interventional radiologist, well versed in the full panoply of radiological tools and knowledgeable about vascular anatomy. And his reports show that he is familiar with the "mechanical forces involved" in PAES and has experience diagnosing the condition. But nothing in his CV or his reports indicates that he has consulted on the use of radiological tools during a PAES surgery, used those tools to assess or treat PAES patients after surgery, or otherwise acquired experience in the surgical and postsurgical "management of [PAES] with claudication, angiography, and pseudoaneurysm"—the very circumstances for which he proposes to articulate the standard of care.

In sum, we discern no abuse of discretion in the district court's determinations that the circumstances underlying Luczak's claims involve the surgical and postsurgical treatment for her PAES and that Dr. Resnick lacks the practical experience necessary to opine as to the standard of care applicable to physicians under those circumstances.

**Affirmed.**

10