# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-1058

Wilmington Trust, National Association,
Respondent,

Gregg Williams,
Respondent,

vs.

700 HENNEPIN HOLDINGS, LLC,
Respondent,

Anytime Restoration,
Defendant,

Seven Acquisition LLC,
Appellant.

**Filed March 9, 2026**
**Reversed and remanded; motion to supplement denied**
**and motion to dismiss granted in part**
**Wheelock, Judge**

Hennepin County District Court
File No. 27-CV-20-11149

Karla M. Vehrs, William P. Wassweiler, Conor H.M. Smith, Ballard Spahr LLP, Minneapolis, Minnesota (for respondent Wilmington Trust, National Association)

Jason R. Asmus, Scott M. Flaherty, Yuka Shiotani, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota (for respondent Williams)

Thomas F. DeVincke, Patrick B. Steinhoff, Malkerson Gunn Martin, LLP, Minneapolis, Minnesota (for respondent 700 Hennepin Holdings, LLC)

Andrew L. Marshall, Bryce D. Riddle, James C. Kovacs, Bassford Remele, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Harris, Judge; and Jesson, Judge.[*]

## SYLLABUS

A judgment in favor of a tenant renting receivership property and against a receiver that results from a receiver-initiated action against the tenant to preserve the receivership property is part of the "expenses of preserving, protecting, or disposing of" the receivership property under Minnesota Statutes section 576.51, subdivision 1(1) (2024).

## OPINION

**WHEELOCK**, Judge

Appellant judgment holder challenges the district court's order approving the final distribution of receivership assets and discharging respondent receiver, arguing the district court erred when it (1) denied appellant's motion to amend the immunity provisions and bond requirement of the order appointing the receiver and (2) determined, pursuant to Minnesota Statutes section 576.51, subdivision 1(1), that appellant's judgments against the receiver, which resulted from an action initiated by the receiver, were not entitled to priority as an expense of the receivership over a secured claim. Respondent secured-claim holder filed motions to supplement the record and to dismiss the appeal as moot. We deny the motion to supplement the record as unnecessary and grant in part the motion to dismiss; we reverse the district court's judgment as to the priority of appellant's judgments against the receiver; and we remand for further proceedings.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

This case arises from a longstanding dispute between appellant tenant Seven Acquisition LLC (Seven), which owned a nightclub and restaurant, and respondent 700 Hennepin Holdings LLC (property owner), which owned a building in downtown Minneapolis (the property). The dispute was related to Seven's tenancy in the property, which was later placed in receivership. Seven holds two judgments against the receiver, respondent Gregg Williams. In this most recent iteration of the dispute, Seven appeals from the district court's judgment approving the final distribution of receivership assets, terminating the receivership, and discharging the receiver, and it seeks review of the district court's denial of Seven's motion to amend the terms of the order appointing the receiver and decision establishing the priority of claims to the receivership assets. To understand the current posture of the case, we begin with an explanation of the events that preceded the final distribution order.

*The Initial Dispute*

In January 2017, Seven signed a lease with the building's prior owner to rent part of the property, in which it began operating a nightclub and restaurant. In November 2017, property owner purchased the property, assumed the lease with Seven, and recorded a mortgage. In April 2018, the mortgage was assigned to a trust (the trust) in which the beneficiaries are certificate holders and respondent Wilmington Trust National Association (Wilmington) is the trustee.[1]

---

[1] The trust is a commercial-mortgage-backed-securities trust created and governed by a pooling and servicing agreement (PSA) and the beneficiaries are the registered holders of

3

In February 2019, property owner brought an eviction action against Seven, alleging that Seven was in default under the lease for failure to pay rent; Seven denied that it owed rent and asserted that property owner owed Seven nearly $1 million for damages sustained as a result of property owner's failure to maintain the property. The dispute went to arbitration as required under the lease, and in March 2020, the arbitrator issued an award in favor of Seven. About a month later, the property owner stopped paying its mortgage on the property.

In September 2020, the district court confirmed the arbitrator's award and entered judgment in favor of Seven for $826,070.84 plus interest.[2] In July 2021, Seven recorded a judgment lien against the property. Seven was never evicted, and the lease remained in place until Seven terminated it in October 2022.

*The Foreclosure and Receivership Proceedings*

On September 3, 2020, Wilmington initiated an action to foreclose on the property based on property owner defaulting on its mortgage payments and alleging that property owner stopped paying beginning in May 2020.[3] As allowed under the terms of the mortgage, Wilmington requested the appointment of a receiver to manage and operate the

---

"Benchmark 2018-B3, Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-B3."

[2] Property owner has never paid this judgment.

[3] In October 2019, defendant Anytime Restoration perfected its mechanic's lien on the property for over $24,000 of water mitigation work it performed that neither Seven nor property owner paid. The lien was identified as another reason for property owner's default. Anytime Restoration has not participated in this litigation.

property during the pendency of the foreclosure action; it specifically requested that Williams be appointed as the receiver. The next day, the district court issued an order appointing Williams as a limited receiver of the property[4] (the 2020 receivership order) and did not require that Williams post a bond related to his appointment.

Seven was not named as a defendant in the foreclosure action until nearly five months later on January 20, 2021, and it was not served with the complaint until March 18, 2021. After it became a party to the underlying foreclosure proceedings, Seven raised several concerns about the selection of Williams as receiver, including but not limited to the terms of the 2020 receivership order establishing the receiver's immunity and the decision to not require the receiver to post a bond.[5]

The same month—March 2021—that Seven was served, Williams sought an order directing Seven to pay rent, and Seven moved to compel arbitration as required under the lease. The district court denied Seven's motion and granted Williams's motion, ordering Seven to make rent payments. Seven appealed, and this court reversed and remanded after concluding that Williams, as the receiver, was subject to the arbitration provision in the lease. *Wilmington Tr., Nat'l Ass'n, v. 700 Hennepin Holdings, LLC*, 971 N.W.2d 750, 758 (Minn. App. 2022), *aff'd*, 988 N.W.2d 895 (Minn. 2023). The supreme court affirmed that decision, holding that, to make a claim against Seven for an alleged nonpayment of rent,

---

[4] References to Williams in this opinion are to him in his capacity as limited receiver.

[5] Seven asserts that it should have been involved in the foreclosure proceedings earlier as an interested party and that it would have objected to the appointment of Williams as receiver if it had been given notice of the motion to appoint a receiver.

the receiver was required under the terms of the lease to initiate an arbitration proceeding. *Wilmington Tr.*, 988 N.W.2d at 908.[6]

On June 7, 2023, the supreme court entered a costs judgment against Williams in the amount of $850, and the judgment was docketed on November 6. Subsequently, the district court, pursuant to the terms of the lease, awarded Seven its attorney fees and costs incurred to defend against Williams's motion for an order directing Seven to pay rent. The fees-and-costs judgment was entered October 10, 2023, in the amount of $169,835.37. Seven argues that these two judgments in its favor are costs of the receivership that have priority over Wilmington's secured claim.

*Final Distribution and Winding Down the Receivership*

In May 2024, the district court addressed motions filed by the parties. In its motion, Seven sought amendment of the 2020 receivership order, arguing that provisions establishing the scope of the receiver's immunity were too broad and that Williams should be required to post a bond. The district court denied Seven's motion. In its motion, Wilmington asked the district court to determine the priority of claims to the receivership property. The district court granted that motion, determining that Wilmington's claim has priority over Seven's claim. Soon after resolving these motions,[7] the district court granted Williams's motion to approve the sale of the property, which closed on September 10,

---

[6] Williams never initiated an arbitration to pursue the claim for rent against Seven.

[7] Seven appealed both May 2024 orders, and Wilmington argued that the orders were not final appealable orders because final distribution had not yet occurred. In a special term order, this court agreed and dismissed the appeal as premature.

2024. The property sold for $4.3 million; however, earlier in the proceedings, the district court had determined that the property owner owed the trust an amount exceeding $6.3 million for the unpaid balance of the loan and interest on the mortgage, plus continuing interest, and it had entered judgment in favor of the trust. Thus, the amount of proceeds from the sale of the property—the only receivership asset—fell far short of the amount the trust was owed on its judgment secured by the mortgage.

In April 2025, the district court issued its order approving Williams's final report and the plan for final distributions of the receivership assets, terminating the receivership, and discharging Williams as receiver.[8] Under the plan for the final distributions of the receivership assets, the full $4.3 million from the sale of the property was distributed to the trust on its secured claim.

Seven appeals. Wilmington filed motions to supplement the record and to dismiss the appeal as moot. In a special term order, this court deferred the motions to be decided with the merits of Seven's appeal.

**ISSUES**

I.     Must this appeal be dismissed as moot because this court cannot grant effective relief to Seven?

II.     Did the district court err when it determined that a judgment in favor of a tenant renting receivership property that results from a receiver-initiated action against the tenant to preserve the receivership property is not part of the "expenses of preserving, protecting, or disposing of" the receivership property under Minnesota Statutes section 576.51, subdivision 1(1)?

---

[8] Seven did not move to stay enforcement of the district court's April 2025 order.

7

**ANALYSIS**

Seven argues that the district court erred when it (1) denied Seven's motion to amend the 2020 receivership order's immunity provisions and bond requirement and (2) determined, pursuant to Minnesota Statutes section 576.51, subdivision 1(1), that Seven's judgment against Williams, which resulted from an action initiated by Williams, was not entitled to priority as an expense of the receivership over Wilmington's secured claim on behalf of the trust. Wilmington filed a motion to supplement the record on appeal and a motion to dismiss Seven's appeal as moot. Wilmington also offers substantive arguments in response to Seven's contentions about the interpretation of the statute that establishes the priority of claims to receivership assets.

Because a moot case is nonjusticiable and "[appellate courts] will dismiss an appeal as moot when a decision on the merits is no longer necessary or an award of effective relief is no longer possible," *Winkowski v. Winkowski*, 989 N.W.2d 302, 307-08 (Minn. 2023) (quotation omitted), we first consider the motion to supplement the record and the motion to dismiss the appeal as moot. And because we ultimately conclude that Seven's claim as to the priority determination is not moot, we then turn to the parties' arguments about the interpretation of Minnesota Statutes section 576.51, subdivision 1(1).

**I.    The appeal is moot in part.**

After Seven filed its principal brief, Wilmington filed a motion to dismiss the appeal as moot, arguing that this court cannot grant effective relief for either Seven's challenge to the denial of its motion to amend the receivership order or its challenge to the decision about the priority of its claim to receivership assets because the receivership has been

terminated and the receivership assets have already been distributed and no longer exist.[9]

In support of its mootness argument, Wilmington moved to supplement the record with a declaration and an attached exhibit. We first address the motion to supplement the record before turning to the issue of mootness.[10]

> **A. Wilmington's motion to supplement the record is unnecessary; we consider the documents submitted for the limited purpose of determining mootness.**

Appellate courts have considered supplemental materials in support of motions when events have occurred between the district court's order and the appeal that raise issues relating to mootness. *See, e.g.*, *Hous. & Redev. Auth. v. Walser Auto Sales, Inc.*, 641 N.W.2d 885, 888 (Minn. 2002); *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 584 n.3 (Minn. 1977) (recognizing that "[s]ome courts have used the power to look beyond the record for the purposes of determining mootness or other post-trial procedural matters"); *In re Welfare of Child of K.O.*, 4 N.W.3d 359, 364 n.1 (Minn. App. 2024); *Brosdahl v. Minn. Mut. Fire & Cas. Co.*, 437 N.W.2d 695, 697-98 (Minn. App. 1989), *overruled on other grounds by Emps. Mut. Cos. v. Nordstrom*, 495 N.W.2d 855 (Minn. 1993).

Here, Wilmington asserts that the declaration and attached exhibit are necessary for our consideration of whether Seven's appeal is moot. It submits for our review the

___

[9] Wilmington points out that, as we observed in footnote 8, *supra*, Seven did not move for or obtain a stay of the final order or judgment to preserve the status quo.

[10] Williams, also a respondent on appeal, did not join Wilmington's motions, but argues in his principal brief that Seven's appeal is moot as to the immunity provisions and bond requirement in the 2020 receivership order.

declaration of Roderick Kemp, Vice President of K-Star Asset Management LLC, which is the company that was acting as special servicer for Wilmington, and a bank statement that is attached as an exhibit.

The declaration explains the process of distribution pursuant to the PSA for the trust account. It states that the receivership assets of $3,753,071.20 were distributed to the trust's beneficiaries, who are individual certificate holders.[11] The declaration also explains that the attached bank statement is the only information a certificate holder would have received about the trust assets.

Wilmington argues that these supplementary materials show that the receivership assets no longer exist and that it is not possible to claw back any funds that were distributed to certificate holders and, thus, that the relief Seven seeks is not available. Seven does not dispute that the funds have been distributed and the identities of specific certificate holders cannot be ascertained.

Because the distribution of receivership assets occurred after the filing of the order being appealed and raises the issue of mootness, we may consider the documents submitted in support of Wilmington's motion to dismiss for the purpose of determining mootness. And because we can do so without supplementing the record on appeal, Wilmington's motion to supplement the record is denied as unnecessary.

---

[11] Because the amount due on the trust's judgment was more than $6.3 million, all of the receivership assets went to pay this as the first-priority claim of the receivership and no funds remained to pay any of the lower-priority claims.

10

**B. Seven's challenge to the denial of its motion to amend the 2020 receivership order is moot; however, Seven's challenge as to the priority of claims to the receivership assets is not moot because this court can grant effective relief.**

As we have already observed, "[appellate courts] will dismiss an appeal as moot when a decision on the merits is no longer necessary or an award of effective relief is no longer possible." *Winkowski*, 989 N.W.2d at 308 (quotation omitted); *Walser Auto Sales, Inc.*, 641 N.W.2d at 888 ("An issue is not moot if a party could be afforded effectual relief."). "But mootness is not a mechanical rule that is automatically invoked whenever the underlying dispute between the parties is settled or otherwise resolved; it is a flexible discretionary doctrine." *Snell v. Walz*, 985 N.W.2d 277, 284 (Minn. 2023) (quotations omitted). "We routinely decline to hear moot cases because our court does not issue advisory opinions or decide cases merely to make precedents." *Quinn v. LMC NE Minneapolis Holdings, LLC*, 985 N.W.2d 571, 573 n.2 (Minn. 2023) (quotation omitted). Appellate courts dismiss a moot issue. *Snell*, 985 N.W.2d at 283-84.

Wilmington argues that this court cannot grant effective relief to Seven in this appeal because the receivership has been terminated and the receivership assets have already been distributed and no longer exist; thus, any opinion would be advisory. We consider, first, whether Seven's challenge to the denial of its motion is moot and, second, whether its challenge to the decision about the priority of its claim is moot.

**1. Seven's challenge to the district court's denial of its motion to amend the receivership order is moot.**

Seven seeks review of district court's denial of its motion requesting that the 2020 receivership order be amended to (a) require the receiver post a bond pursuant to

11

Minnesota Statutes section 576.27 (2024) in the amount of $3 million and (b) remove language that Seven asserts granted the receiver absolute immunity from claims, beyond the scope of immunity allowed by Minnesota Statutes section 576.28(a) (2024).

Section 576.27 provides, in part, "After appointment, a receiver shall give a bond in the sum, nature, and with the conditions that the court *shall order in its discretion* consistent with section 574.11." (Emphasis added.)  In its 2020 receivership order, the district court did not require the receiver to post a bond.  Section 576.28(a) states, "The receiver shall be entitled to all defenses and immunities provided at common law for acts or omissions within the scope of the receiver's appointment."

Williams points out that the receivership was terminated and the receiver was discharged upon the entry of the district court's final order on April 28, 2025, and argues that this court can no longer grant relief as to the terms of the receivership, both for the immunity provisions and the bond requirement.

But before we analyze Wilmington's mootness argument, we briefly discuss the procedural history.  Seven previously filed an appeal of the district court's May 2024 orders and argued it may do so pursuant to Minn. R. Civ. App. P. 103.03(g), which states that an appeal may be taken from "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding."  In a special term order, this court determined that the May 15, 2024 order denying Seven's motion to amend terms of the 2020 receivership order and the May 20, 2024 order granting Wilmington's determination-of-priority motion were not final orders for purposes of rule 103.03(g).  This court indicated that Seven could seek review of the May 2024 orders in a timely appeal.

12

Seven does not argue that an exception to mootness applies. Instead, it argues that judicial estoppel should apply to Wilmington's mootness arguments. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Seven argues that Wilmington, having argued that Seven's previous appeal was premature and that Seven could appeal from a final order, is now judicially estopped from arguing that Seven's current appeal is moot. However, the ability to seek review of an issue does not equate to a guarantee that the issue will not become moot. *See Moore v. McDonald*, 205 N.W. 894, 895 (Minn. 1925) (holding that review of order denying injunction preventing construction of bridge was moot after bridge was completed); *Farm Bureau Mut. Ins. Co. v. Schwan*, 687 N.W.2d 388, 391 (Minn. App. 2004) (holding that expiration of nonsolicitation provision and of injunction pending appeal made issues relating to enforceability of provision moot). Pursuant to the rules, an order or judgment may be enforced pending appeal unless a motion is first brought in the district court and the district court orders relief. Minn. R. Civ. App. P. 108.01, subd. 1; Minn. R. Civ. App. P. 108.02, subd. 1; *see* Minn. R. Civ. App. P. 108.01 1998 comm. cmt. ("[B]ecause the order or judgment that is the subject of the appeal is not generally stayed automatically, a matter may, in some circumstances, become moot while the appeal is pending."). If the district court does not order relief, a party may seek review of that determination under Minn. R. Civ. App. P. 108.02, subd. 6.

Seven filed an objection in district court to Williams's motion for approval of his final report and discharge. In its objection, Seven asked the district court to stay entry of

13

its final order pending any appeal but made no motion to stay enforcement of the order or judgment. It argued that, if Williams were allowed to distribute the funds, there may be no recourse for an appellate decision that determines the judgments against the receiver are expenses of the receivership. In a footnote in its final order, the district court noted that Seven had not filed a motion to stay and that the court "[did] not find that Seven's assumption is adequate grounds to delay entry of judgment in this matter."

The record confirms that, while Seven raised the possibility of a stay, it did not move the district court to stay enforcement of the order or judgment. Given its comments to the district court about the possibility of having no recourse, it appears Seven was aware of the risk that the issues on appeal could become moot. Because Wilmington's mootness arguments do not contradict its previous premature-appeal arguments, we reject Seven's contention that judicial estoppel would apply to these circumstances to prohibit Wilmington from arguing that the current appeal is moot, and we return to our analysis of that argument.

In arguing that the receivership's termination and the receiver's discharge render Seven's appeal moot as to its motion to amend the terms of the 2020 receivership order, Wilmington cites Minnesota Statutes section 576.27, which provides that "the receiver's bond shall be conditioned on the receiver's faithful discharge of its duties in accordance with the orders of the court and the laws of this state" and that, once discharged, a receiver has no further duties that could warrant a receiver's bond. And it points to the district court's determination in its final order that Williams met all requirements for discharge. Wilmington also directs us to *Chicago Title Insurance Co. v. Old Dominion Title Services,*

14

*Inc.*, in which this court determined that a challenge to the district court's appointment of a receiver was moot when the receiver "was discharged upon final disbursement of the funds, and the receivership was terminated." No. A06-1628, 2007 WL 4303300, at *6 (Minn. App. Dec. 11, 2007).[12]

It is important to point out that Seven does not challenge the district court's decision to terminate the receivership. Accordingly, it is asking for a discharged receiver to post a bond on a receivership that no longer exists. The receivership property has been sold and the assets distributed, and there is no remaining property for the receiver to hold. Wilmington is correct that there is no effective relief available as to the bond requirement for the receivership.

As to the immunity provisions, there is no extant receivership for which immunity provisions can be amended, and Seven does not meaningfully contest that effective relief is no longer available after the receivership has terminated.[13]

---

[12] We note that, while nonprecedential and thus merely persuasive, *see* Minn. R. Civ. App. P. 136.01, subd. 1(c), our decision in *Chicago Title Insurance Co.* is consistent with persuasive decisions from other jurisdictions. *See, e.g.*, *Muney v. Arnould*, No. 81354, 2021 WL 4238755, at *1 (Nev. 2021) (order) ("Because the receiver has been discharged, we cannot grant any relief regarding the receiver's appointment."); *Med. Vision Grp., P.S.C. v. Philpot*, 261 S.W.3d 485, 491 (Ky. 2008) (same); *Kandalepas v. Economou*, 645 N.E.2d 543, 547 (Ill. App. 1994) (concluding that, if order appointing receiver were properly before the court, the appeal was moot because the property was sold, funds distributed, and receiver discharged).

[13] Seven and Williams are currently litigating an immunity issue before the supreme court in A24-1535. The supreme court granted Seven's petition for review of this court's decision in *Seven Acquisition LLC v. Williams*. 25 N.W.3d 412 (Minn. App. 2025), *rev. granted* (Minn. Oct. 15, 2025). That litigation does not appear to be based on the immunity provisions in the 2020 receivership order and is instead based on quasi-judicial immunity. "Court-appointed receivers are entitled to quasi-judicial immunity both through the

Because it does not appear that any effective relief could be granted if this court reverses the denial of Seven's motion to amend the terms of the 2020 receivership order as to the bond and immunity issues, we grant Wilmington's motion to dismiss this part of Seven's appeal as moot.

### 2. Seven's challenge to the district court's determination of priority is not moot.

Wilmington argues that Seven's challenge to the district court's determination of priority is also moot because all the receivership assets have been distributed to the trust, which in turn distributed the funds to its certificate holders, and therefore, no effective relief can be provided on appeal. Wilmington mainly relies on real-property cases that explain that transfer to a bona fide purchaser can render an issue moot, asserting that the certificate holders who received the funds here are innocent third parties who cannot be readily ascertained for the purpose of compelling them to return the funds.

Wilmington has not persuaded us that the transfer of real property to a bona fide purchaser is akin to the distribution of funds in this case. Unlike real property that generally cannot be substituted, money is fungible. Wilmington's argument is about the collectability of the particular assets already distributed, but collectability is not the issue before us. The issue is whether Wilmington has demonstrated that no possible effective relief could be granted. *See Walser Auto Sales, Inc.*, 641 N.W.2d at 886 (stating that an issue is not moot "where effective relief, either through return of a portion or all of the

common law and by statute providing for all defenses and immunities provided at common law." *Id.* at 416 (quotation omitted).

16

property taken or some other appropriate remedy, remains possible"). We are not convinced that Seven could not be afforded effective relief through other means, such as a judgment against the trust's other, equally fungible, assets.

Thus, because effective relief "remains possible," Wilmington's motion to dismiss the priority issue as moot is denied, and we turn to the final issue before us regarding the priority of claims to the receivership assets.

## II. Because Seven's judgments against the receiver have priority, the district court erred in its priority determination.

Seven's primary challenge to the district court's final order is that it erred by determining that, pursuant to Minnesota Statutes section 576.51, subdivision 1(1), Seven's judgments against Williams were not entitled to priority as an expense of the receivership over Wilmington's secured claim on behalf of the trust, notwithstanding that the judgments resulted from an action initiated by Williams. Specifically, Seven argues that its judgments against Williams for attorney fees and costs are expenses of the receivership and that, therefore, they are entitled to priority and should have been paid out prior to distribution of the trust assets for Wilmington's claim. The parties agree that the determination of priority of claims in a receivership is a matter of statutory construction, and they both argue that the statute is unambiguous and we may look to its plain language. But they differ in their interpretation of the plain language of the relevant statutes.

The interpretation of a statute is a question of law subject to de novo review. *Douglas v. State*, 986 N.W.2d 705, 709 (Minn. 2023). Our goal in interpreting a statute is to "ascertain and effectuate" the legislature's intent. Minn. Stat. § 645.16 (2024). We

17

begin the task of interpreting a statute by asking "whether the statute's language, on its face, is ambiguous." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 169 (Minn. 2021) (quotation omitted). If a statute is unambiguous, we "interpret the words and phrases in the statute according to their plain and ordinary meanings." *Graves v. Wayman*, 859 N.W.2d 791, 798 (Minn. 2015).

"Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16; *see also* Minn. Stat. § 645.17(2) (2024) (establishing presumption that legislature intends entire statute to be "effective and certain"); *Glen Paul Ct. Neighborhood Ass'n v. Paster*, 437 N.W.2d 52, 56 (Minn. 1989) (providing that sections of a statute must be read together to give words their plain meaning). "We 'construe a statute as a whole' and 'interpret each section in light of the surrounding sections to avoid conflicting interpretations.'" *Energy Pol'y Advocs. v. Ellison*, 980 N.W.2d 146, 156 (Minn. 2022) (quoting *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000)). Furthermore, distinctions in language in the same context are presumed to be intentional, and we apply the language consistently with that intent. *Transp. Leasing Corp. v. State*, 199 N.W.2d 817, 819 (Minn. 1972).

We begin our analysis with an overview of the relevant statutory provisions. Three statutes are implicated by the parties' arguments regarding the substance of Seven's priority claim. We are interpreting the language of the statute that sets forth the priority of

18

claims to receivership assets, Minnesota Statutes section 576.51, subdivision 1 (2024) (the priority statute). The priority statute provides:

> Subdivision 1. Priorities. Allowed claims shall receive distribution under this chapter in the following order of priority and, except as set forth in clause (1), on a pro rata basis:
>
> (1) claims secured by liens on receivership property, which liens are valid and perfected before the time of appointment, to the extent of the proceeds from the disposition of the collateral in accordance with their respective priorities under otherwise applicable law, *subject first to reimbursing the receiver for the reasonable and necessary expenses of preserving, protecting, or disposing of the collateral, including allowed fees and reimbursement of reasonable expenses of the receiver and professionals*;
>
> (2) actual, necessary costs and expenses incurred during the receivership, other than those expenses allowable under clause (1), including allowed fees and reimbursement of reasonable expenses of the receiver and professionals employed by the receiver under section 576.32; . . . [and]
>
> (4) allowed unsecured claims, to the extent of the dollar amount in effect in United States Code, title 11, section 507(7), for each individual, arising from the deposit with the respondent, before the time of appointment of the receiver, of money in connection with the purchase, lease, or rental of property or the purchase of services for personal, family, or household use by individuals that were not delivered or provided[.]

Minn. Stat. § 576.51, subd. 1. The next relevant statute is Minnesota Statutes section 540.14 (2024), which describes how judgments against receivers shall be treated and states:

> *Except as limited in chapters 576 and 577*, any receiver, assignee, or other person appointed by a court to hold or manage property under its direction, may be sued on account of any acts or transactions in carrying on the business connected with such property without prior leave of court.

19

Such action may be brought in any county in which it could have been brought against the person or corporation represented by such receiver or other person, shall be tried in the same manner and subject to the same rules of procedure, and any judgment recovered therein against such receiver or other person shall be paid by the receiver or other person as a part of the expenses of managing such property.

(Emphasis added.) Finally, Minnesota Statutes section 576.39 (2024) addresses the treatment of judgments generally and states:

Subdivision 1. Actions by or against receiver. The receiver may sue in the receiver's capacity and, subject to other sections of this chapter and all immunities provided at common law, may be sued in that capacity.

Subd. 2. Venue. Unless applicable law requires otherwise or the court orders otherwise, an action by or against the receiver or relating to the receivership or receivership property shall be commenced in the court and assigned to the judge before whom the receivership is pending.

Subd. 3. Joinder. Subject to section 576.42, a limited or general receiver may be joined or substituted as a party in any action or other proceeding that relates to receivership property that was pending at the time of appointment. Subject to other sections of this chapter, a general receiver may be joined or substituted as a party in any action or other proceeding that was pending at the time of appointment in which the respondent is a party. Pending actions may be transferred to the court upon the receiver's motion for change of venue made in the court in which the action is pending.

Subd. 4. Effect of judgments. A judgment entered subsequent to the time of appointment against a receiver or the respondent shall not constitute a lien on receivership property, nor shall any execution issue thereon. Upon submission of a certified copy of the judgment in accordance with section 576.49, the amount of the judgment shall be treated as an allowed claim in a general receivership. A judgment against a limited receiver shall have the same effect as a judgment against the respondent, except that the judgment shall be

20

enforceable against receivership property only to the extent ordered by the court.

The district court read section 576.39, subdivision 4, to apply to Seven's judgments and determined that these judgments are "allowed claims" that fall under section 576.51, subdivision 1(4), which covers unsecured claims, and thus it placed Seven's claim lower in priority than Wilmington's claim. And because there were insufficient funds to cover even Wilmington's claim, this determination effectively precluded Seven from recovering any of the money it was owed under the judgments.

Seven argues that its judgments against Williams constitute "reasonable and necessary expenses" under section 576.51, subdivision 1(1), and thus should be paid before Wilmington's claim secured by the mortgage. In support of its argument, Seven points to the last clause in section 540.14, which says that "any judgment recovered therein against such receiver . . . shall be paid by the receiver . . . as a part of the expenses of managing such property." Seven contends that section 540.14 is plain and unambiguous and that, when read in conjunction with section 576.51, subdivision 1, it can only be reasonably understood to mean that judgments against the receiver for attorney fees and costs are expenses of the receivership paid with first priority.

Wilmington argues, however, that the limiting language at the beginning of section 540.14—"Except as limited in chapters 576 and 577"—means that section 576.39, subdivision 4, actually controls and sets forth the treatment of judgments in a receivership action as an unsecured "allowed claim." Thus, Wilmington asserts that Seven's judgments

21

against the receiver are unsecured allowed claims with a lower priority than Wilmington's first-priority secured claim.

Seven responds by arguing that the only logical reading of section 540.14 is that the phrase "except as limited in chapters 576 and 577" applies only to the first paragraph, which is the paragraph in which the phrase appears. The statute has two distinct paragraphs: the first provides that a receiver may be sued, and the second addresses how such an action may be brought and may proceed and explains how any judgment obtained through the action is satisfied. The second paragraph also explicitly provides that any judgment obtained against the receiver "shall be paid by the receiver . . . as a part of the expenses of managing such property." Seven explains that chapters 576 and 577 limit when a receiver may be sued for acts or transactions of the receiver "in carrying on the business connected with [receivership] property without prior leave of court."

Wilmington does not provide a different reasonable interpretation of the phrase or argue that the limiting language unambiguously applies to both paragraphs. We conclude that, based on a plain reading of the statute, the second paragraph of section 540.14 is not limited by the first paragraph; however, this does not resolve the dispute. Section 540.14 states that "any judgment recovered therein against such receiver or other person shall be paid by the receiver or other person as a part of the expenses of managing such property" and could directly conflict with section 576.39, subdivision 4, which addresses the "effect of judgments" against a receiver. Wilmington argues that, if there is a conflict between section 540.14 and section 576.39, the latter controls because it is more specific and more recently enacted.

22

"Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16; *see also* Minn. Stat. § 645.17(2) (establishing presumption that legislature intends entire statute to be "effective and certain"); *Paster*, 437 N.W.2d at 56 (providing that sections of a statute must be read together to give words their plain meaning). In reviewing the contents of the statute, we "interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Energy Pol'y Advocs.*, 980 N.W.2d at 156 (quotation omitted). Furthermore, distinctions in language in the same context are presumed to be intentional, and we apply the language consistent with that intent. *Transp. Leasing Corp.*, 199 N.W.2d at 819.

Because we discern a way to construe these statutes that gives effect to all of the provisions, we read them to be consistent with each other. Section 576.39 explains the procedural requirements of actions by or against a receiver, including the receiver's capacity to sue, venue, and joinder. Subdivision 4 of that section addresses a judgment entered against the receiver or the respondent subsequent to the time of the receiver's appointment. "'Respondent'" means "the person over whose property the receiver is appointed," which is property owner in this case. Minn. Stat. § 576.21(s) (2024).

Any such claim "shall not constitute a lien on receivership property, . . . except that the judgment shall be enforceable against receivership property only to the extent ordered by the court." Minn. Stat. § 576.39, subd. 4. The plain language of the statute is clear. No postappointment judgments can be enforced via lien on the receivership property in a general receivership, but in a limited receivership, such a judgment may be enforceable to the extent ordered by the district court. As Seven points out, this is logical and entirely

23

consistent with the priority statute, section 576.51, subdivision 1, which gives clear priority to secured liens perfected prior to appointment. Minn. Stat. § 576.51, subd. 1(1). If later judgments could become liens on the receivership property itself, this would contradict the secured party's interest and the purpose of a receivership overall.

Both section 576.39 and section 540.14 address judgments against a receiver. Section 576.39 states that such judgments shall not constitute a lien on the property. Section 540.14 states that such judgments "shall be paid by the receiver" as "a part of the expenses of managing such property." Read in conjunction, and presuming that distinctions in language in the same context of judgments against a receiver are intentional, the statutes are not in conflict and instead serve distinct purposes. *See Transp. Leasing Corp.*, 199 N.W.2d at 819.

We also point out that this interpretation is consistent with the 2012 Receivership Act's incorporation of common-law principles governing receiverships. The text expressly provides that, "[u]nless *explicitly* displaced by this chapter, the provisions of other statutory law and the principles of common law remain in full force and effect and supplement the provisions of this chapter." Minn. Stat. § 576.22(d) (2024) (emphasis added); *see Wilmington Tr.*, 988 N.W.2d at 903 (addressing this provision). The above analysis is consistent with the common law of receiverships. *See* 75 C.J.S. *Receivers* § 4 (2024) (observing that courts have historically appointed receivers when they deem it necessary to protect and preserve the property involved in the underlying litigation and to provide full protection to the parties' rights to the property until a final disposition). In determining principles of common-law receiverships, we look to the guidance provided in *Corpus Juris*

24

*Secundum*'s section on receivers, as the supreme court has done before us. *See Wilmington Tr.*, 988 N.W.2d at 902. *Corpus Juris Secundum* provides that "[a] personal judgment cannot properly be awarded against a receiver who is not personally liable, but it should be awarded against the receiver in the receiver's official capacity, to be paid in due course of the administration of the receiver's trust." 75 C.J.S. *Receivers* § 387 (2024). It also states that, "[s]ince actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, judgments against the receiver as receiver are payable only from the funds in the receiver's hands" or such other funds "which may remain subject to the jurisdiction and direction" of the court that appointed the receiver. 75 C.J.S. *Receivers* § 388 (2024); *see also Truesdale v. Farmers' Loan & Tr. Co.*, 70 N.W. 568, 570 (Minn. 1897) (addressing "earnings and income" and "general funds" as property "in [receiver's] hands").

While judgments against a receiver generally cannot be reduced to a judgment lien against the property, such judgments can be paid as "a part of the expenses of managing such property." Thus, by rejecting Seven's arguments based on an erroneous construction of the applicable statutes, the district court erred.

Again however, this does not fully resolve the issue of where such "expenses of managing" the property fit within the priority statute—section 576.51, subdivision 1. Seven argues that they fit within subdivision 1(1), under "reimbursing the receiver for the reasonable and necessary expenses of preserving, protecting, or disposing of the collateral, including allowed fees and reimbursement of reasonable expenses of the receiver and professionals." We agree.

25

Seven's judgment stems from a lawsuit Williams initiated against Seven, the tenant renting receivership property, to recover putative unpaid rent based on Williams's determination that the lawsuit was "[c]ritical to the Receiver's administration of the receivership estate" and that not pursuing such an action "would cripple the receivership estate and completely undermine [Williams's] ability to preserve and maintain the property." Williams lost the lawsuit, but the judgment against him resulted from efforts he deemed critical to his duty to preserve the receivership property, and thus, the judgment for Seven's attorney fees and costs related to the lawsuit was a "reasonable and necessary expense" he incurred in taking that action. We therefore hold that, pursuant to Minnesota Statutes section 576.51, subdivision 1(1), a judgment in favor of a tenant renting receivership property that results from a receiver-initiated action against the tenant to preserve the receivership property is part of the "expenses of preserving, protecting, or disposing of" the receivership property.

We discern another error in the district court's final order based on its failure to address the final sentence of section 576.39, subdivision 4, which states, "A judgment against a limited receiver shall have the same effect as a judgment against the respondent, except that the judgment shall be enforceable against receivership property only to the extent ordered by the court." Williams was appointed as, and remained throughout the receivership, a limited receiver. But the district court stated:

> As Plaintiff correctly argues, Minn. Stat § 576.39, subd. 4 clearly states that the amount of "a judgment entered subsequent to the time of appointment against a receiver or the respondent" shall be treated as an "allowed claim." As an "allowed claim," Defendant Seven's judgments against the

26

> Receiver actually fall under Minn. Stat § 576.51 subd.1 (4), which covers unsecured claims.

In doing so, the district court addressed only the general-receivership sentence and not the applicable "limited receiver" sentence. The limited-receiver sentence is a codification of common law, which recognizes "that the manner of payment is controlled by the receivership court" and that judgments can only be enforced against receivership property "by the direction and consent of the receivership court."[14]

By relying only on the general-receiver sentence and not addressing Seven's equitable arguments, it appears that the district court erred by concluding that it did not have the authority to enforce Seven's judgment against the property. This issue should also be addressed on remand.

## DECISION

Wilmington's motion to supplement the record is denied as unnecessary. Wilmington's motion to dismiss is granted in part because Seven's challenge related to amending the terms of the 2020 receivership order is moot and denied in part because

---

[14]    A judgment against a receiver operates only against assets in the receiver's possession and is not enforceable by execution, in that the manner of payment is controlled by the receivership court. A judgment against a receivership by a court other than the court that appointed receiver must be referred to the appointing court for enforcement and cannot be carried into effect as against the property in receivership except by the direction and consent of the receivership court, unless a statute otherwise provides.

65 Am. Jur. 2d *Receivers* § 252 (footnote omitted), Westlaw (database updated February 2026).

effective relief remains available for Seven's priority-determination claim. Furthermore, because Seven's judgments against Williams were reasonable and necessary expenses of preserving the receivership property that should be paid before claims that are secured by liens on the receivership property, the district court erred when it determined that Seven's judgments were not entitled to priority and, accordingly, we reverse that determination and remand for further proceedings not inconsistent with this opinion. On remand, we instruct the district court to apply the statutes as interpreted above and to consider and address its authority to enforce Seven's judgment against the property.

**Reversed and remanded; motion to supplement denied and motion to dismiss granted in part.**